## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARRO CORPORATION, f/k/a ARRO | ) | Case No. 19-35238 |
| PACKAGING COMPANY | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |
| | ) | **Hearing Date:  December 19, 2019** |
| | ) | **Hearing Time: 11:00 a.m.** |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on **Thursday, December 19, 2019, at 11:00 a.m.,** we shall appear before the Honorable Janet S. Baer of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in his place and stead, at Courtroom 615 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF DEBTOR FOR ENTRY OF AN ORDER: (I) AUTHORIZING (A) MAINTENANCE OF EXISTING BANK ACCOUNTS, (B) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (C) CONTINUED USE OF EXISTING BUSINESS FORMS, AND (D) CONTINUED USE OF EXISTING BOOKS AND RECORDS; (II) WAIVING INVESTMENT AND DEPOSIT REQUIREMENTS OF 11 U.S.C. § 345(b); AND (III) SHORTENING NOTICE**, a copy of which is hereby served upon you.

ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
HENRY B. MERENS, ESQ. (ARDC #6181695)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for Arro Corporation**

1

1056327v4

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that true and correct copies of this notice and the documents referred to therein were served upon the parties listed on the below service list as indicated on December 16, 2019.

By: /s/ Erich S. Buck
Erich S. Buck, Esq.

## SERVICE LIST

**Via CM/ECF**

- **Michael L. Gesas**     michael.gesas@saul.com, jurate.medziak@saul.com
- **John W Guzzardo**     jguzzardo@hmblaw.com, ecfnotices@hmblaw.com
- **Aaron L. Hammer**     ahammer@hmblaw.com, ecfnotices@hmblaw.com
- **Patrick S Layng**     USTPRegion11.ES.ECF@usdoj.gov
- **Michael P O'Neil**     moneil@taftlaw.com, aolave@taftlaw.com
- **James Patrick Sullivan**     jsulliva@chapman.com
- **Sean P. Williams**     sean.williams@saul.com

**Via FedEx Overnight (unless otherwise indicated)**

*20 Largest Creditors*

Aerotek, Inc.
3689 Collections Ctr Dr.
Chicago, IL 60693

Alternative Staffing, Inc.
5620 West Cermak Rd.
Cicero, IL 60804

American Express
American Express Tower
200 Vesey Street
New York, NY 10285

Backhaul Direct
1 Virginia Ave., Suite 400
Indianapolis, IN 46204

Batory Foods
1700 Higgins Road, Suite 300
Des Plaines, IL 60018-3800

Bluegrass Dairy and Food, Inc.
606 W. Main St.
Springfield, KY 40069

BREIT Industrial Canyon IL1B03 LLC
c/o Stream Realty – Chicago, LLC
Attn: Property Management
6250 N. River Road, Ste. 6025
Rosemont, IL 60018

BREIT Industrial Canyon IL1B03 LLC
c/o Revantage Corporate Services
Attn: Managing Counsel and Lease Admin.
222 South Riverside Plaza, Suite 2000
Chicago, IL 60606

Cacique de Café Soluvel
Rua Horacio Sabino Coimbra 100
86072-900
Londrina, Parana

2

1056327v4

Brazil
*via email to pereira@caciqueny.com
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606

Gierczyk, Inc.
16200 Clinton Street
Harvey, IL 60426

Graphic Packaging International
1500 Riveredge Parkway, Suite 100,
9th Floor
Atlanta, GA 3328

Karlin Foods Corp.
1845 Oak Street, Suite 19
Northfield, IL 60093

Kraft Heinz Company
200 East Randolph Street, Suite 7600
Chicago, IL 60601

Live Electric, LLC
68 Spring Ave
Glen Ellyn, IL 60137

Mercer Foods, LLC
1836 Lapham Drive
Modesto, CA 95354

Onin Group Midwest, LLC
1 Perimeter Park S., Suite 450N
Birmingham, AL 35243

Santa Fe Industrial Investors
One Oakbrook Terrace, Suite 400
Oakbrook Terrace, IL 60181

Sensory Effects Powder Systems
136 Fox Run Drive
Defiance, OH 43512
St. Charles Trading
650 North Raddant Road
Batavia, IL 60510

The Royal Group
2318 Paysphere Circle
Chicago, IL 60674

*Secured Creditors*

SBA – Illinois District Office
500 W. Madison St., Suite 1150
Chicago, IL  60661

United States Attorney's Office
Northern District of Illinois, Eastern Division
219 S. Dearborn St., 5th Floor
Chicago, IL 60604

TCF Equipment Finance, a division of TCF
National Bank
c/o John Murphy
CT Corporation
208 S. LaSalle St., Ste. 814
Chicago, IL 60604

CHS Inc.
5500 Cenex Drive
Inver Grove Heights, MN 55077

Quincy Recycle Paper Inc.
c/o Kelsey Ley
526 S. 6th St.
Quincy, IL 62301

Massimo Zanetti Beverage USA, Inc.
c/o Kenneth Lancaster
1370 Progress Road
Suffolk, VA 23434

Pinnacle Foods Inc.
c/o John F. Kroeger
399 Jefferson Dr.
Parsippany, NJ  07054

Hitachi Capital America Corp.
Attn: RYAN COLLISON
800 CONNECTICUT Ave.
NORWALK, CT 06854

HYG Financial Services, Inc.
Attn: William J. Mayer
125 High St.
Boston, MA 02110

Toyota Industries Commercial Finance, Inc.
CT Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

Toyota Industries Commercial Finance, Inc.
Attn: David Crandall
8951 Cypress Waters Blvd., Ste. 300
Dallas, TX 75019

Ascentium Capital, LLC
CorpDirect Agents, Inc.
208 S. LaSalle St., Ste 814
Chicago, IL 60604

Ascentium Capital, LLC
Attn: Joel Cappon, Thomas Depping
23970 HIGHWAY 59 N
KINGWOOD, TX 77339

TCF Equipment Finance, Inc.
CT Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

TCF Equipment Finance, Inc.
Attn: William S. Henak
11100 Wayzata BLVD., Ste. 801
Minnetonka, MN 55305

RLC Funding, A division of Navitas Lease
Corp., ISAOA
111 Executive Center Drive, Ste. 102
Columbia, SC 29210

4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARRO CORPORATION, f/k/a ARRO | ) | Case No. 19-35238 |
| PACKAGING COMPANY | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |
| | ) | **Hearing Date:  December 19, 2019** |
| | ) | **Hearing Time: 11:00 a.m.** |

**MOTION OF DEBTOR FOR ENTRY OF AN ORDER: (I) AUTHORIZING (A)
MAINTENANCE OF EXISTING BANK ACCOUNTS, (B) CONTINUED USE OF
EXISTING CASH MANAGEMENT SYSTEM, (C) CONTINUED USE OF EXISTING
BUSINESS FORMS, AND (D) CONTINUED USE OF EXISTING BOOKS AND
RECORDS; (II) WAIVING INVESTMENT AND DEPOSIT REQUIREMENTS OF
11 U.S.C. § 345(b); AND (III) SHORTENING NOTICE**

NOW COMES Arro Corporation, f/k/a Arro Packaging Company, debtor and debtor in

possession (the "**Debtor**"), by and through its undersigned proposed counsel and, pursuant to 11

U.S.C. §§ 105, 345, and 363, move this Court for entry of an order (I) authorizing: (a)

maintenance of its existing bank accounts, (b) continued use of its existing cash management

system, (c) continued use of its existing business forms, and (d) continued use of its existing

books and records; (II) waiving the investment and deposit requirements of 11 U.S.C. § 345(b);

and (III) shortening notice (the "**Motion**"). In support thereof, the Debtor respectfully states as

follows:

**I.      FACTUAL BACKGROUND**

1.      On December 13, 2019 (the "**Petition Date**"), the Debtor filed a voluntary

petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et

seq. (the "**Code**"), commencing the above-captioned case (the "**Chapter 11 Case**"). Since the

1

Petition Date, the Debtor has remained in possession of its assets and has continued to operate its

business as debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2.      Neither a trustee nor a committee of unsecured creditors has been appointed in the

Chapter 11 Case.

3.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334. Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief

requested herein are sections 105, 345, and 363 of the Code.

4.      The nature of the Debtor's business and the factual background relating to the

commencement of the Chapter 11 Case are set forth in more detail in the *Declaration of Patrick

Gaughan  in Support of Chapter 11 Petition, First-Day Motions, and Certain Second-Tier

Motions* (the "**Declaration**") filed on the Petition Date and incorporated herein by reference.[1]

## II.    RELIEF REQUESTED

5.      By this Motion, the Debtor seeks an order: (i) authorizing: (a) maintenance of its

existing bank accounts, (b) continued use of its existing cash management system, (c) continued

use of its existing business forms, and (d) continued use of its existing books and records; and

(ii) waiving the investment and deposit requirements of 11 U.S.C. § 345(b).  The Debtor submits

this Motion subject to the limitation that any requirements imposed on the Debtor under any

orders of this Court (such orders shall collectively be referred to as the "**DIP Financing

Orders**") approving any debtor-in-possession financing for, or any use of cash collateral, shall

control to the extent any of the relief requested herein is inconsistent with the terms of the DIP

Financing Orders.

---

[1] Any capitalized terms not otherwise defined in the Motion shall have the same meaning as ascribed in
the Declaration.

1056327v4

6.      The Office of the United States Trustee (the "**UST**") has established certain operating guidelines for debtors in possession. Among other things, these guidelines require a chapter 11 debtor to: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) open a new set of books and records as of the commencement date of the case. These guidelines are designed to provide a clear line of demarcation between prepetition and postpetition transactions and operations, and prevent the inadvertent postpetition payment of prepetition claims. As detailed herein, however, the Debtor requests that these guidelines be waived in the Chapter 11 Case, as the Debtor is capable of operating its business within the dictates of the Code without being saddled with a burdensome new system of cash management and bank accounts.

**A.      The Debtor should be granted authority to maintain its existing bank accounts.**

7.      Prior to the Petition Date, the Debtor maintained certain bank accounts (collectively, the "**Bank Accounts**") in the ordinary course of its business operations. The two (2) bank accounts maintained by the Debtor prior to the Petition Date are listed on **Exhibit A** hereto. Together, the Bank Accounts make up a centralized cash management system that the Debtor uses to collect, transfer, and disburse funds, and to record accurately such collections, transfers, and disbursements.

8.      The Bank Accounts are maintained at BMO Harris Bank N.A. (the "**Bank**"), which is also the Debtor's first priority secured lender and proposed debtor-in-possession lender. The Bank Accounts are comprised of a collections account (the "**Collections Account**") and a disbursements account (the "**Disbursements Account**").

3

9.      Notwithstanding the UST guideline that new bank accounts be opened, the Debtor respectfully submits that it would experience undue hardship if required to close the Bank Accounts and open new accounts at one or more banks.  Among other things, resultant delays, confusion, and disruption of the Debtor's collection of receivables is expected in the event that the Debtor was forced to close its existing Bank Accounts and open new accounts.

10.      In order to ensure immediate access to receivables, avoid delays in payments to administrative creditors, and ensure as smooth a transition into chapter 11 as possible with minimal disruption, it is important that the Debtor be permitted to maintain the Bank Accounts. Subject to a prohibition against honoring prepetition checks without specific authorization from this Court, the Debtor requests that the Bank Accounts be deemed debtor-in-possession accounts and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as those employed during the prepetition period, be authorized.

11.      In anticipation of filing the Chapter 11 Case, approximately one week prior to the Petition Date, the Debtor ceased issuing checks for payments other than payroll to minimize the risk of paying prepetition claims after the Petition Date.  To further protect against inadvertent payment of prepetition claims: (a) the Debtor shall cause the cancellation of and/or place stop payments on any and all checks in float as of the Petition Date, except to the extent the payment of such claims is authorized by the Court; (b) the Debtor has removed ACH authority, or has taken such other steps as are necessary to ensure that no ACH withdrawals occur on account of prepetition claims, except to the extent payment of such claims is authorized by the Court; (c) the Debtor's personnel will be instructed how to distinguish readily between prepetition and postpetition obligations without closing existing accounts and opening new ones; and (d) the

4

Debtor's personnel will advise the Bank regarding which obligations are prepetition or postpetition obligations. The Debtor has been in contact with the Bank prior to the Petition Date, in part to address such concerns.

12.     Further, to ease the task of distinguishing between prepetition and postpetition checks, the Debtor will: (a) leave a gap in its check numbers (rounding subsequent check numbers up to the next hundred, as indicated on <u>Exhibit A</u> hereto) such that check numbers preceding the gap will be readily identifiable as prepetition checks and the check numbers following the gap will be readily identifiable as postpetition checks; or (b) otherwise utilize its existing Cash Management System (as defined below) to implement a monitoring system which has the same effect.

13.     The Debtor submits that if the relief requested in this Motion is granted, it will use its best efforts to not pay, and the Bank will not be directed to pay, any debts incurred before the Petition Date, except to the extent the Court may authorize the payment of such debts. The Debtor is confident it can avoid such prepetition payments and has been particularly attuned to this issue prior to the Petition Date. For example, the Debtor has taken great care to ensure that prior to the Petition Date it funded its payroll to ensure that employees received paychecks for prepetition work and to minimize the prepetition "stub period" of work between the pay period and the Petition Date. The Debtor is separately seeking court authority before corresponding paychecks are issued postpetition in the upcoming weeks.

14.     The Debtor therefore seeks to be excused from the UST's requirement that the Bank Accounts be closed.

**B.      The Debtor should be authorized to continue using its existing cash management system.**

5

1056327v4

15.     In order to lessen the disruption caused by the Chapter 11 Case and maximize the value of the Debtor's estate, the Debtor also requests authority to continue to use its existing cash management system described herein (the "**Cash Management System**"), as it may be modified as required by the Debtor in the exercise of its business judgment.

16.     The Cash Management System functions essentially as follows:

- All receipts are deposited into the Collections Account.  The Disbursements Account is used to fund all obligations of the Debtor, including payroll and creditors in the ordinary course of its business.

- The Disbursements Account is debited daily based on whatever checks have been issued and deposited and ACH and wire transfers that have been effectuated on that day, with the majority of disbursements made by wire or ACH.

-  The Disbursements Account is funded through a "zero balance transfer" from the Collections Account – i.e., any negative balance in the Disbursements Account is reduced by a corresponding reduction in any positive balance in the Collections Account.

- The Debtor carefully monitors its disbursements relative to anticipated receipts to ensure it maintains a "zero balance" daily.[2]

17.     The Disbursements Account is debited directly by Paycor, Inc. ("**Paycor**"), the Debtor's payroll processor, to fund the Debtor's payroll obligations, and by Benefit Administrative Services International Corporation ("**BASIC**"), the administrator of the Debtor's flexible spending account(s) ("**FSA(s)**") and health reimbursement account(s) ("**HRA**(s)"), to fund reimbursements to employees under the FSAs and HRAs.  On an approximate weekly basis, Paycor withdraws funds from the Disbursement Account to fund payroll and to remit the necessary federal and state taxes and withholdings. Approximately ten (10) of the Debtor's

---

[2] Prior to the current iteration of the Cash Management System, the Debtor maintained a line of credit (the "**LOC**") with the Bank, whereby the Bank swept the Collections Account daily to replenish the LOC, with any shortfalls in the Disbursements Account covered by drawing down on the LOC.

6

employees receive hard copy paychecks (instead of direct deposit), which are issued by Paycor and drawn from an account maintained by Paycor following debiting of the Disbursements Account.  BASIC withdraws funds from the Disbursements Account for reimbursements of FSA and HRA claims submitted by the employees to BASIC.

18.    Paycor and BASIC may access the Disbursements Account to withdraw directly via ACH the funding necessary for each payroll and for FSA and HSA reimbursements. Similarly, certain landlords and certain equipment lessors and/or lenders have the ability to draw directly from the Disbursements Account via ACH for lease or equipment financing payments. The Debtor has ensured that the few vendors that draw through ACH are current as of the Petition Date, thus there are no prepetition claims that may be inadvertently paid via ACH postpetition.

19.    The Cash Management System allows the Debtor to manage all of its cash flow and disbursement needs and includes the necessary account mechanisms to enable the Debtor to trace funds, ensure that all transactions are adequately documented and readily ascertainable, and comply with applicable requirements. The Debtor will continue to maintain detailed records reflecting any transfers of funds.

20.    The Cash Management System is used by the Debtor in its ordinary business practice. Because of the Debtor's integrated financial structure, establishing a new system of accounts and a new cash management and disbursement system would result in additional costs and expenses, and imposing delays and inconveniences that could threaten the viability of the Debtor's ongoing operations.

21.    Bankruptcy courts routinely grant chapter 11 debtors authority to continue utilizing existing cash management systems. *See In re The Charter Co.*, 778 F.2d 617, 621 (11th

7

Cir. 1985) (stating that it was "entirely consistent" with the requirements of section 363 of the Code for the bankruptcy court to authorize the debtor to use its prepetition "routine cash management system"); *see also, e.g., In re UNR Indus., Inc.*, 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984) (noting that the debtors "utilize[d] a court approved and common cash management system").

22.     As one bankruptcy court has explained, a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993), *aff'd in part, rev'd in part*, 997 F.2d 1039, 1061 (3d Cir. 1993) (emphasizing the bankruptcy court's reasoning that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."); *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (noting that a cash management system allowed the debtor "to administer more efficiently and effectively its financial operations and assets").

23.     For the foregoing reasons, the Debtor's maintenance of the Cash Management System is not only essential but also is in the best interests of its estate, all creditors and other parties in interest.

C.      **The Debtor should be granted authority to continue to use its existing business forms.**

24.     In order to minimize the expenses borne by its estate, the Debtor also requests that it be permitted to continue to use its existing correspondence and business forms (including but not limited to letterhead, invoices, etc.) without alteration or change to those used before the Petition Date. Changing correspondence and business forms would be unnecessary, burdensome to the Debtor's estate, and expensive, and disruptive to business operations. *See In re Gold*

*Standard Baking, Inc.*, 179 B.R. 98, 105-06 (Bankr. N.D. Ill. 1995) (holding Bankruptcy

Administrator's requirement prohibiting issuance of checks without "Debtor in Possession"

designation to be unenforceable); *In re Johnson*, 106 B.R. 623, 625 (Bankr. D. Neb. 1989)

(holding that debtor was not required to obtain new checks imprinted with "debtor in

possession").

25.     If the Debtor is not permitted to continue to use its existing checks and business

forms, the resulting prejudice will include significant delay in the administration of the Debtor's

business operations and unnecessary cost to the Debtor's estate to print new checks and forms.

For these reasons, the Debtor requests that it be authorized to use existing business forms without

placing the label "Debtor in Possession" on each such form.

> **D.     The Debtor should be granted authority to continue to use its existing
>          books and records.**

26.     In order to minimize expenses to the Debtor's estate and avoid time-consuming

administrative burdens, the Debtor also requests that it be authorized to continue to use its

existing books and records.

27.     Opening new books and records would be burdensome to the estate and disruptive

to the Debtor's business operations. For these reasons, the Debtor requests that it be authorized

to continue using its existing books and records, provided that the Debtor makes appropriate

notations in the books and records to reflect the Petition Date and the commencement of the

Chapter 11 Case.

> **E.     Cause exists to waive the investment and deposit guidelines of section 345(b)
>          of the Code.**

28.     Section 345(b) of the Code authorizes deposits or investments of money of a

bankruptcy estate, such as cash, in a manner that will "yield the maximum reasonable net return

1056327v4

on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) provides that the trustee or debtor in possession must require, from the entity with which the money is deposited or invested, a bond in favor of the United States secured by the undertaking of an adequate corporate surety. 11 U.S.C. § 345(b).

29.     A court may, however, relieve a debtor in possession of the restrictions imposed by section 345(b) for cause. *Id.*

30.     As set forth above, the Debtor, in the ordinary course of its business, maintains its Bank Accounts with the Bank. The Debtor understands the Bank to be a financially stable banking institution which is FDIC-insured. Consequently, it is unnecessary and unduly burdensome to require the Debtor to demand that the Bank issue a bond in connection with the Bank Accounts. Cause exists to waive the investment and deposit requirements under section 345(b) of the Code.

## III.   NOTICE

31.     Notice of the filing of this Motion and the hearing scheduled therefor has been provided by CM/ECF, overnight delivery, and/or facsimile to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) each of the Debtor's 20 largest unsecured creditors pursuant to Federal Rule of Bankruptcy Procedure 1007(d); (c) counsel to the Debtor's priority secured lender and primary depository institution, BMO Harris Bank N.A.; (d) counsel to the Debtor's subordinated secured lender, the United States Small Business Administration; and (e) all other parties who have requested notice and service of pleadings in any of the Chapter 11 Case.

10

1056327v4

32.     Local Bankruptcy Rule 9013-1 requires that a "notice of motion served personally must be served no later than 4:00 p.m. on the third day before the date of presentment." Local Bankr. R. 9013-1.D(2).  As reflected on the certificate of service accompanying this Motion, certain of the noticed parties will be served with notice of the Motion by overnight delivery on the morning of Tuesday, December 17, 2019.  Such notice will fall just shy of the three days' notice required under the applicable Local Bankruptcy Rule.

33.     Given the critical nature of the relief requested in the Motion, and in light of the irreparable harm the Debtor would suffer absent such relief, the Debtor requests that the Court deem the notice provided hereof as sufficient and/or the notice requirements under Local Bankruptcy Rule 9013-1 waived or reduced accordingly.

## IV.    **CONCLUSION**

34.     The Debtor respectfully submits that the requested relief is critical to avoid immediate and substantial disruption to its operations and is necessary to preserve business continuity and avoid the operational and administrative paralysis that would occur without such relief.

WHEREFORE, Arro Corporation, f/k/a Arro Packaging Company, debtor and debtor in possession herein, respectfully requests the entry of an order in accordance with the foregoing recommendations in the form filed herewith and made a part hereof without further notice, and for such other and further relief as is just.

Respectfully Submitted,

ARRO CORPORATION

By: /s/ Erich S. Buck
        One of its proposed attorneys

11

1056327v4

ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
HENRY B. MERENS, ESQ. (ARDC #6181695)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for Arro Corporation**

1056327v4