**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARRO CORPORATION, f/k/a ARRO | ) | Case No. 19-35238 |
| PACKAGING COMPANY, | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |
| | ) | **Hearing Date: Dec. 19, 2019** |
| | ) | **Hearing Time: 11:00 a.m.** |

<u>**NOTICE OF MOTION**</u>

PLEASE TAKE NOTICE that on **Thursday, December 19, 2019, at 11:00 a.m.,** we shall appear before the Honorable Janet S. Baer of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in her place and stead, at Courtroom 615 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF DEBTOR (A) FOR AUTHORITY TO (I) PAY CERTAIN PREPETITION EMPLOYEE WAGES, SALARIES AND OTHER COMPENSATION, (II) PAY AND HONOR EMPLOYEE MEDICAL AND OTHER BENEFITS, AND (III) CONTINUE EMPLOYEE BENEFIT PROGRAMS; (B) TO OBTAIN RELATED RELIEF; AND (C) FOR SHORTENED AND LIMITED NOTICE THEREOF**, a copy of which is hereby served upon you.

ADAM P. SILVERMAN, ESQ. (ARDC # 6256676)
ERICH S. BUCK, ESQ. (ARDC # 6274635)
STEVEN B. CHAIKEN, ESQ. (ARDC # 6272045)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd, Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for Arro Corporation**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that true and correct copies of this notice and the documents referred to therein were served upon the parties listed on the below service list as indicated on December 16, 2019.

By: <u>/s/ Steven B. Chaiken</u>
Steven B. Chaiken, Esq.

**<u>Via CM/ECF</u>**

- **Michael L. Gesas**    michael.gesas@saul.com, jurate.medziak@saul.com
- **John W Guzzardo**    jguzzardo@hmblaw.com, ecfnotices@hmblaw.com
- **Aaron L. Hammer**    ahammer@hmblaw.com, ecfnotices@hmblaw.com
- **Patrick S Layng**    USTPRegion11.ES.ECF@usdoj.gov
- **James Patrick Sullivan**    jsulliva@chapman.com
- **Sean P. Williams**    sean.williams@saul.com

**<u>Via FedEx Overnight (unless otherwise indicated)</u>**

*<u>20 Largest Creditors</u>*

Aerotek, Inc.
3689 Collections Ctr Dr.
Chicago, IL 60693

Alternative Staffing, Inc.
5620 West Cermak Rd.
Cicero, IL 60804

American Express
American Express Tower
200 Vesey Street
New York, NY 10285

Backhaul Direct
1 Virginia Ave., Suite 400
Indianapolis, IN 46204

Batory Foods
1700 Higgins Road, Suite 300
Des Plaines, IL 60018-3800

Bluegrass Dairy and Food, Inc.
606 W. Main St.
Springfield, KY 40069

BREIT Industrial Canyon IL1B03 LLC
c/o Stream Realty – Chicago, LLC
Attn: Property Management
6250 N. River Road, Ste. 6025
Rosemont, IL 60018

BREIT Industrial Canyon IL1B03 LLC
c/o Revantage Corporate Services
Attn: Managing Counsel and Lease Admin.
222 South Riverside Plaza, Suite 2000
Chicago, IL 60606

Cacique de Café Soluvel
Rua Horacio Sabino Coimbra 100
86072-900
Londrina, Parana
Brazil
*via email to pereira@caciqueny.com

Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606

Gierczyk, Inc.
16200 Clinton Street
Harvey, IL 60426

Graphic Packaging International
1500 Riveredge Parkway, Suite 100,
9th Floor
Atlanta, GA 3328

Karlin Foods Corp.
1845 Oak Street, Suite 19
Northfield, IL 60093

Kraft Heinz Company
200 East Randolph Street, Suite 7600
Chicago, IL 60601

Live Electric, LLC
68 Spring Ave
Glen Ellyn, IL 60137

Mercer Foods, LLC
1836 Lapham Drive
Modesto, CA 95354

Onin Group Midwest, LLC
1 Perimeter Park S., Suite 450N
Birmingham, AL 35243

Santa Fe Industrial Investors
One Oakbrook Terrace, Suite 400
Oakbrook Terrace, IL 60181

Sensory Effects Powder Systems
136 Fox Run Drive
Defiance, OH 43512
St. Charles Trading
650 North Raddant Road
Batavia, IL 60510

The Royal Group
2318 Paysphere Circle
Chicago, IL 60674

*Secured Creditors*

SBA – Illinois District Office
500 W. Madison St., Suite 1150
Chicago, IL  60661

United States Attorney's Office
Northern District of Illinois, Eastern
Division
219 S. Dearborn St., 5th Floor
Chicago, IL 60604

TCF Equipment Finance, a division of TCF
National Bank
c/o John Murphy
CT Corporation
208 S. LaSalle St., Ste. 814
Chicago, IL 60604

CHS Inc.
5500 Cenex Drive
Inver Grove Heights, MN 55077

Quincy Recycle Paper Inc.
c/o Kelsey Ley
526 S. 6th St.
Quincy, IL 62301

Massimo Zanetti Beverage USA, Inc.
c/o Kenneth Lancaster
1370 Progress Road
Suffolk, VA 23434

Pinnacle Foods Inc.
c/o John F. Kroeger
399 Jefferson Dr.
Parsippany, NJ  07054

Hitachi Capital America Corp.
Attn: RYAN COLLISON
800 CONNECTICUT Ave.
NORWALK, CT 06854

HYG Financial Services, Inc.
Attn: William J. Mayer
125 High St.
Boston, MA 02110

Ascentium Capital, LLC
Attn: Joel Cappon, Thomas Depping
23970 HIGHWAY 59 N
KINGWOOD, TX 77339

Toyota Industries Commercial Finance, Inc.
CT Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

TCF Equipment Finance, Inc.
CT Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

Toyota Industries Commercial Finance, Inc.
Attn: David Crandall
8951 Cypress Waters Blvd., Ste. 300
Dallas, TX 75019

TCF Equipment Finance, Inc.
Attn: William S. Henak
11100 Wayzata BLVD., Ste. 801
Minnetonka, MN 55305

Ascentium Capital, LLC
CorpDirect Agents, Inc.
208 S. LaSalle St., Ste 814
Chicago, IL 60604

RLC Funding, A division of Navitas Lease
Corp., ISAOA
111 Executive Center Drive, Ste. 102
Columbia, SC 29210

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARRO CORPORATION, f/k/a ARRO | ) | Case No. 19-35238 |
| PACKAGING COMPANY, | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |
| | ) | **Hearing Date: Dec. 19, 2019** |
| | ) | **Hearing Time: 11:00 a.m.** |

**MOTION OF DEBTOR (A) FOR AUTHORITY TO (I) PAY CERTAIN PREPETITION
EMPLOYEE WAGES, SALARIES AND OTHER COMPENSATION, (II) PAY AND
HONOR EMPLOYEE MEDICAL AND OTHER BENEFITS, AND (III) CONTINUE
EMPLOYEE BENEFIT PROGRAMS; (B) TO OBTAIN RELATED RELIEF;
AND (C) FOR SHORTENED AND LIMITED NOTICE THEREOF**

NOW COMES Arro Corporation, f/k/a Arro Packaging Company, debtor and debtor in possession herein (the "**Debtor**"), by and through its undersigned proposed counsel and, pursuant to sections 363, 507, 1107(a), and 1108 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Code**"), and hereby moves this Court for (a) authority to (i) pay certain prepetition employee wages, salaries and other compensation; (ii) pay and honor employee medical and other benefits; (iii) continue employee benefit programs; (b) related relief; and (c) shortened and limited notice thereof (the "**Motion**"). In support of the Motion, the Debtor respectfully states as follows:

**I.      FACTUAL BACKGROUND**

1.      On December 13, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Code, commencing the above-captioned case (the "**Chapter 11 Case**").  Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate its business as debtor in possession in accordance with sections 1107(a) and 1108 of the Code.

2.     Neither a trustee nor a committee of unsecured creditors has been appointed in the Chapter 11 Case.

3.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (M), and (O).  The statutory predicates for the relief requested herein are sections 363, 365, 507, 1107, and 1108 of the Code.

4.     The nature of the Debtor's business and the factual background relating to the commencement of the Chapter 11 Case are set forth in more detail in that certain *Declaration of Patrick Gaughan in Support of Chapter 11 Petition, First-Day Motions, and Certain Second Tier Motions* (the "**Declaration**") filed on the Petition Date and incorporated herein by reference.

## II.     RELIEF REQUESTED

5.     The Debtor is in the business of manufacturing and packaging food products and ingredients. The Debtor depends on its workforce - comprised of both direct employees (approximately 30%) and leased personnel from two staffing agencies (approximately 70%) to run its operations. The skills, training and knowledge of both the Debtor's direct employees and supplemental outsourced personnel (collectively, the "**Workforce**") are essential to the Debtor's ongoing operations and ability to effectively administer its business during the Chapter 11 Case and maximize the value of the Debtor's assets.

6.     The Workforce aggregates to approximately 500 individuals on a daily basis, and thus the Debtor is highly dependent upon these individuals. The Workforce performs a variety of critical functions, including manufacturing, labor, research and development, sales, management, and general oversight and operation of the Debtor's business locations, as well as accounting,

administration, finance, human resources, marketing, maintenance, information technology, security and other tasks.

7.    On information and belief, a large portion of the Debtor's approximately 124 direct employees (the "**Employees**") rely exclusively on their compensation and benefits to pay their daily living expenses and provide for their households. The Employees (and their families) would be exposed to significant financial harm if the payment of compensation (including obligations related to benefits) and other programs benefiting the Employees were interrupted. Should their compensation and other benefits be suspended or terminated, the Employees will likely be required to find work elsewhere. And given the Debtor's reliance upon the Employees, the Debtor's operations would suffer irreparable harm if it lost or had to replace the Employees.

8.    Accordingly, to ensure retention of its direct employees and to maintain employee morale, by this Motion, the Debtor requests that the Court enter an order, pursuant to sections 363(b)(1), 507(a)(4), 507(a)(5), 1107(a), and 1108 of the Code, authorizing, but not directing, the Debtor to pay certain prepetition wage and salary claims of the Debtor's employees, to pay and honor all employee benefits, and to continue employee benefit programs after the Petition Date, consistent with the Debtor's ordinary course of business prior to the Petition Date. The Debtor requests authority to pay outstanding wages, salary and/or commissions accruing prior to and including the Petition Date in the estimated total gross amount of $146,000 (collectively, the "**Prepetition Wage Claims**")[1]; to pay other prepetition claims arising in connection with the Debtor's employee medical benefits, health and other insurance, accrued prepetition vacation time, reimbursable expenses, and accrued prepetition contributions to employee benefit plans as

---

[1]   To protect the confidentiality of employee information, the names, addresses, and specific wage claims of individual employees have not been disclosed herein.  Such information will be provided to the Court or the United States Trustee (or other interested parties, provided sufficient guaranties of confidentiality are in place), upon request.

detailed further below (together with the Prepetition Wage Claims and all related withholdings and taxes and all costs incident thereto, the "**Prepetition Employee Obligations**").

9.      The Debtor submits this Motion subject to the limitation that any requirements imposed on the Debtor under any orders of this Court approving any debtor in possession financing or any use of cash collateral (collectively, the "**DIP Financing Orders**") shall control to the extent any of the relief requested herein is inconsistent with the terms of the DIP Financing Orders.

### A.      Employee Wages and Salaries

10.      As stated above, the Debtor directly employs approximately 124 individuals.[2] Approximately 57 of the Employees are salaried ("**Salaried Employees**"), with the balance of Employees (approximately 67) paid on an hourly basis ("**Hourly Employees**"). Nearly all Employees regularly work at least 40 hours per week, while a handful work part-time.  None of the Employees are unionized.

11.      The Debtor provides overtime pay to Hourly Employees in accordance with applicable state and federal law. Overtime hours are paid at the rate of 1.5 times the hourly base rate for any hours in excess of forty (40) hours per week.

12.      The Debtor pays its Employees on a weekly basis, one week in arrears. Thus, an Employee's wages or salary accruing in any given week is paid the Friday of the following week. Paycor, Inc. ("**Paycor**") processes the Debtor's payroll and provides the Debtor a mechanism for paying employee wages and benefits, and calculating all proper employer and employee withholdings from the payroll. Paycor also remits tax withholdings directly to the applicable taxing authorities.

---

[2]   Employee data, including total employees, wages, and salaries, are approximated as of the Petition Date.

13.     The Debtor's last regularly scheduled payroll occurred on the Petition Date (funded prior to the filing of this Chapter 11 Case) for wages accruing through December 7, 2019. The next payroll is scheduled to be made on December 20, 2019, for compensation accruing between December 8, 2019 and December 14, 2019.

14.     The Debtor seeks authority to satisfy all Prepetition Wage Claims in the amounts finally determined using the Debtor's customary and ordinary methods heretofore utilized.[3] As part of this relief, the Debtor seeks authority to honor all prepetition checks issued to Employees who do not receive direct deposits. The Debtor believes that payment of the Prepetition Wage Claims is critical to the retention of its Employees and thus the continued operation of its business. No single Employee is owed prepetition wages in excess of the $13,650 priority limit provided under section 507(a)(4) of the Code.

## B.     **Outsourced Labor**

15.     In addition to the Employees, the Debtor supplements its personnel with the services of individuals (aggregating approximately 70% of the Workforce) procured by two independent staffing agencies (collectively, the "**Outsourced Labor**"). The Outsourced Labor are not employed directly by the Debtor; instead, the Debtor contracts with Alternative Staffing, Inc. ("**ASI**") and Onin Group Midwest, LLC, successor to Labor Temps II, LLC ("**Onin**," and collectively with ASI, the "**Staffing Agencies**"), which furnish personnel to the Debtor on a regular, consistent and as-needed basis.

---

[3]   This Motion seeks authority to pay one week's worth of prepetition compensation in the gross amount of approximately $4,327 to Patrick Gaughan, the Debtor's former president and director, as further set forth in the Declaration. Though the Debtor does not believe Mr. Gaughan qualifies as an "insider" for purposes of section 503(c) of the Code, this information is being provided in full disclosure. Other than with the possible exception of Mr. Gaughan, this Motion does not seek payment of any prepetition wages to any "insiders."

16.     The number of Outsourced Labor fluctuates daily based on the Debtor's needs and the availability of appropriately skilled personnel. In a typical week, however, ASI furnishes between 250 and 300 employees to the Debtor, and Onin furnishes an additional 100 or so employees to the Debtor. The Outsourced Labor perform a wide range of crucial functions for the Debtor, ranging from general labor to highly skilled work.

17.     Under its contract with the Debtor (the "**ASI Contract**"), ASI is required, among other things, to furnish qualified personnel as requested by the Debtor, bear the responsibility for all state and federal withholding, unemployment insurance, and workers' compensation insurance, and maintain general liability insurance coverage for its employees. The Debtor pays ASI directly for each employee furnished, in accordance with billing rates and policies (such as a vacation and holiday leave policy) specified in the contract. Under the prepetition course of dealing between the Debtor and ASI, the Debtor was invoiced weekly and paid on a "net 45 days" basis. The balance owed to ASI for services rendered prior to the Petition Date is estimated to be approximately $1,618,000 (the "**ASI Prepetition Claim**").[4]

18.     Under the Debtor's contract with Onin (the "**Onin Contract**"), similar to the ASI Contract, Onin is required to maintain workers' compensation insurance and liability insurance covering its employees. The Debtor pays Onin for each employee furnished, in accordance with specified billing rates and policies specified in the Onin Contract, and reimburses Onin for payroll taxes related to the employee's services.

19.     The Onin Contract provides for weekly invoices and payment within 45 days of each invoice's issuance. In practice, however, the Debtor fell considerably (approximately 3

---

[4]  No relief is sought in this Motion with respect to the ASI Prepetition Claim.

months) behind in its payments to Onin, and faces a balance owed for services rendered through the Petition Date in the estimated amount of $1,014,000 (the "**Onin Prepetition Claim**").[5]

20.     In an effort to maintain Onin's invaluable supply of laborers, the Debtor has, over the last two months, been paying the oldest one-and-a-half invoices then outstanding (*e.g.*, if the oldest unpaid invoice totaled $10,000 and the second-oldest invoice totaled $15,000, the Debtor would pay $17,500). In order to ensure an uninterrupted flow of the Outsourced Labor, the Debtor intends to work with the Staffing Agencies in a manner which pays for postpetition services on terms agreeable to the Debtor and the Staffing Agencies.

### C.    Social Security, Income Taxes, and Other Withholdings and Deductions

21.     Attendant to the payment of the Debtor's payroll obligations, the Debtor is also obligated to withhold and pay federal, state, and local withholding taxes for itself and the Employees.

22.     As part of its payroll processing services, Paycor automatically withholds from Employee paychecks the taxes that the Debtor is required to withhold and remits them to the applicable taxing authorities.

23.     As part of its request to pay Prepetition Employee Obligations, the Debtor seeks authorization to pay all employer and employee federal, state, and local withholding and payroll-related taxes relating to prepetition periods, including, but not limited to, all withholding taxes, Social Security taxes, Medicare taxes, unemployment insurance premiums, and all other miscellaneous withholdings. The Debtor estimates that the amount of the employer-side prepetition withholding and payroll-related taxes is $10,000.

24.     Additionally, the Debtor has been authorized, from time to time, to make deductions from employees' wages, including contributions to various benefit programs (many

---

[5]   No relief is sought in this Motion with respect to the Onin Prepetition Claim.

of which are described below) and wage garnishments. To the extent that any of these are considered property of the Debtor's estate, the Debtor requests permission to allow such deductions to continue, and to be paid to their designated recipients, consistent with and in the ordinary course of its business.

### D. Employee Health, FSA, HRA, Dental, Vision, Life, Disability, and Workers' Compensation Insurance

25.     The Debtor offers its Employees access to health, dental, life, and health insurance.  Employees are eligible to enroll in these programs in the first month beginning 60 days after the Employee's date of hire.

### Health Insurance

26.     Employees may enroll in a health insurance plan (for themselves, spouses and dependent children), for which the Debtor pays 75% of the premium, and the Employee pays 25%. The total monthly premium is approximately $90,000, of which the Debtor pays approximately $67,500. The health insurance program is administered by Blue Cross Blue Shield of Illinois ("**BCBS**"). Both the Debtor's and the Employees' portions of the premium, as well as applicable fees for the administration of the plan, are billed to the Debtor by BCBS.

27.     The Debtor offers a supplementary health and accident insurance program with Aflac, Inc., for which the premiums are deducted from employee paychecks.   This supplementary insurance program is voluntary, and entirely employee-funded.

### FSA and HRA

28.     Additionally, the Debtor offers eligible Employees access to flexible spending accounts ("**FSA**") and health deductible-reimbursement ("**HRA**") plans, both administered by BASIC benefits company ("**BASIC**"). The FSA Plan is an entirely voluntary plan and allows participating Employees to set aside pre-tax dollars from their pay to cover eligible healthcare

expenses. The HRA Plan is limited to participating Employees of the PPO portion of the health insurance coverages. The PPO Plan has annual deductibles of $3,500 per person covered by the Plan.  The HRA serves to reimburse those participants who paid in excess of $1,000 of their deductible in a calendar year (*i.e.*, up to $2,500.00 per covered person per year).

29.     In connection with administering some of the employee benefit programs and plans offered by the Debtor, BASIC charges administrative fees. On average, these fees amount to approximately $350 per month in total, and the Debtor desires to pay any such fees that may have accrued prepetition, so as to avoid an interruption in employee reimbursements.

### Dental and Vision

30.     The Debtor also offers dental and vision coverage to its Employees. They are voluntary programs, in which the Employees are solely responsible for payment of the premiums. The Debtor is not responsible for paying any portion of the premiums for dental or vision insurance, though the Debtor does withhold required premium amounts from the applicable Employees and remits same to the carriers.

### Life and Disability

31.     The Debtor provides all eligible Employees with short-term disability, basic life, and voluntary life coverage through Dearborn National. The Debtor pays 100% of the premiums for short-term disability and basic life coverage, which are invoiced at approximately $4,000 per month in total. Employees opting into voluntary life coverage pay 100% of the premiums therefor.

### Worker's Compensation

32.    The Debtor also has a workers' compensation policy with The Travelers Indemnity Company. The Debtor makes premium payments of approximately $20,000 per month to maintain this policy.

### Maintenance of Employee Insurance Benefits

33.    The Debtor intends to maintain employee health, dental, life, disability, workers' compensation, and similar insurance for its Employees ("**Employee Insurance Benefits**") during the Chapter 11 Case.[6] To the extent there are any claims relating to Employee Insurance Benefits which arose prior to the Petition Date and remain unpaid, the Debtor requests authority to pay such claims, consistent with and in the ordinary course of its business. For example, the Debtor seeks authority to pay such obligations related to Employee Insurance Benefits incurred in the week prior to the Petition Date, as well as any health insurance coverage obligations that arose prepetition even in the event such amounts exceed the statutory limits provided in section 507(a)(5) of the Code.

### E.    Paid Vacation, Sick Leave, and Holidays

34.    In addition to wages and salaries, the Debtor provides Employees with other forms of compensation, including paid time off (ordinarily in the form of paid vacation time and sick leave) and paid holidays.

35.    Employees are eligible for paid vacation time of five, ten, or fifteen days, corresponding to their length of service with the Debtor. Employees are not allowed to carry

---

[6]    To the extent mandated by the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 *et seq*. and other state and federal laws, and consistent with its ordinary business practices prior to the Petition Date, the Debtor also desires to maintain Employee Insurance Benefits for eligible former employees who have left the service of the Debtor prior to the Petition Date.

forward vacation days into another calendar year, except as required by local, state or federal law.

36.    All Salaried Employees typically receive paid time off for New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving, and Christmas. Eligible full-time Salaried Employees are given these days off with pay. In the event Hourly Employees are required to work on these days, they receive holiday pay in addition to their normal pay.

37.    During the pendency of the Chapter 11 Case, the Debtor intends to maintain the same policies with respect to paid vacation, paid time off and sick days, and holidays.

F.    **Reimbursable Business Expenses**

38.    The Debtor reimburses certain Employees for reasonable expenses necessarily incurred in the performance of their respective duties, such as mileage, parking and tolls, and meal expenses while performing company business. Leading up to the Petition Date, certain Employees were authorized to pay for necessary materials and supplies for the Debtor personally, and would be reimbursed for the same. The Debtor requests authority to reimburse all unpaid business expenses incurred by its Employees prior to the Petition Date (estimated to be in a total amount of less than $10,000), consistent with and in the ordinary course of the Debtor's business and pursuant to the DIP Financing Order and related budget thereto.

G.    **401(k) Plan**

39.    After 90 days of employment, Employees are entitled to contribute to a 401(k) plan sponsored by the Debtor and administered by Empower Retirement, a safe harbor plan into which such Employees may contribute pretax earnings for retirement savings. Consistent with the Debtor's payroll, Employees' 401(k) contributions are made one week in arrears. The Debtor offers a matching program, under which it matches 100% of the first 3% of employee

contributions, then 50% of the next 2% of employee contributions, up to a maximum of 4% of employee contributions. Each year, the Debtor pays its matching contributions for the previous year before it files its taxes for that year—for example, in September of this year, prior to filing its 2018 tax return, the Debtor paid approximately $160,000 to Empower Retirement on account of its matching obligations for 2018. The Debtor is still investigating whether to continue, alter, or terminate the 401(k) plan.

### III.    AUTHORITY FOR RELIEF REQUESTED

40.    Ample authority exists to pay prepetition employee obligations where doing so will benefit a debtor's estate. The benefit of paying the Prepetition Employee Obligations can be measured against the adverse impact to the Debtor's estate if the Employees do not remain in the Debtor's employ.

41.    Authority to pay Prepetition Employee Obligations is found in sections 1107(a) and 1108 of the Code, which vest debtors in possession with authority to continue operating their businesses. Sometimes this authority and the concomitant duty to maximize estate value may be fulfilled only through the pre-plan payment of certain unsecured claims. *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *cf. In re Commercial Mortg. & Fin., Co.*, 414 B.R. 389, 395 (Bankr. N.D. Ill. 2009) (noting that a debtor in possession "has the discretionary authority to exercise [its] business judgment in operating the debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation").

42.    Additionally, the Court may authorize payment of the Prepetition Employee Obligations under section 363(b)(1) of the Code, which provides that, after notice and a hearing, a debtor in possession may "use . . . other than in the ordinary course of business, property of the

estate." 11 U.S.C. § 363(b)(1). In *In re Kmart Corp.*, the Seventh Circuit Court of Appeals suggested that section 363(b)(1) of the Code is an appropriate mechanism for payment of certain necessary prepetition debts, provided such payments will ultimately benefit all creditors. *In re Kmart Corp.*, 359 F.3d 866, 874 (7th Cir. 2004). Recently, the United States Supreme Court favorably cited *Kmart* for its analysis in justifying the payment of prepetition claims of critical vendors early in a chapter 11 case. *Czyzewski v. Jevic Holding Corp.*, ___ U.S. ___, ___, 137 S.Ct. 973, 985 (2017) (noting that courts have approved critical vendor payments where "the distributions at issue would 'enable a successful reorganization and make even the disfavored creditors better off'"). A debtor's business judgment as to the use, sale, or lease of estate property is appropriate if supported by "sound business reasons." *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991).

43.     Paying the Prepetition Employee Obligations is supported by sound business reasons. The Debtor operates a manufacturing and packaging business which relies on the services of both the Employees and the Outsourced Labor to operate large and complex lines of production. Missed or reduced paychecks would likely induce significant numbers of the Workforce to find work elsewhere, at a time when the Debtor needs them the most. And replacing the Workforce, in whole or in part, is not a viable option, considering their training in, and familiarity with, the Debtor's operations.

44.     Failing to fulfill the Prepetition Employee Obligations would cause irreparable harm to the Debtor's business, and therefore jeopardize the success of the Chapter 11 Case. Consequently, in addition to satisfying the "sound business reasons" standard for motions under section 363 of the Code generally, payment of the Prepetition Employee Obligations also satisfies the more specific "benefit to all creditors" standard articulated in *Kmart*. *See* 359 F.3d at

874.   Paying the Prepetition Employee Obligations will greatly help the Debtor in maintaining ordinary course business operations during the critical first months of the Chapter 11 Case, and therefore maximizes the potential recovery of all creditors.

45.   The *Kmart* court cautioned that "it is prudent to read, and use, § 363(b)(1) to do the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code." *Id*. at 872.   Payment of the Prepetition Employee Obligations will provide minimal damage to the priorities under the Code because the Code itself prioritizes a significant number of the claims being paid.

46.   Section 507(a)(4) and (5) of the Code requires that certain claims for prepetition wages, salaries, vacation, sick leave, and employee benefit plan contributions be accorded a priority in payment, up to $13,650 per employee. 11 U.S.C. § 507(a)(4)-(5).  By this Motion, the Debtor does not seek to pay any single Employee more than the $13,650 limit. The relief sought herein, therefore, does not "rearrange priorities among creditors" in any meaningful way. *See In re Kmart Corp.*, 359 F.3d at 872.

47.   Courts in this jurisdiction regularly authorize Chapter 11 debtors in possession to pay prepetition employee wages and benefits in instances where employee retention is critical to the success of their bankruptcy cases. *See, e.g.*, *In re Caesars Entm't Operating Co.*, No. 15-01145 (Bankr. N.D. Ill. Mar. 6, 2015), ECF No. 617; *In re Balmoral Racing Club, Inc., et al.*, No. 14-45711 (Bankr. N.D. Ill. Jan. 8, 2015), ECF No. 70; *In re ITR Concession Co.*, No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014), ECF No. 175; *In re SGK Ventures, LLC*, No. 13-37603 (Bankr. N.D. Ill. Sept. 26, 2013), ECF No. 26; *In re Edison Mission Energy*, No. 12-49219 (Bankr. N.D. Ill. Jan. 17, 2013), ECF No. 319.

48.     For the foregoing reasons, the Debtor respectfully requests that it be granted authority to pay the Prepetition Employee Obligations, if and when they are due and owing, after the Petition Date, consistent with the Debtor's prepetition practices.

## IV.    SATISFACTION OF BANKRUPTCY RULE 6003

49.     Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") empowers a court to grant relief in the first 21 days after the filing of a bankruptcy petition "to the extent that relief is necessary to avoid immediate and irreparable harm."  As discussed in more detail above, and in the Declaration, failure to pay the Prepetition Employee Obligations timely would likely be fatal to the Debtor's ongoing business and would jeopardize its likelihood of success in the Chapter 11 Case. Accordingly, the Debtor submits that, to the extent Bankruptcy Rule 6003 applies to the relief granted herein, its requirements are satisfied.

## V.    WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)

50.     Because the Debtor, its estate, and creditors will suffer immediate and irreparable harm if all Prepetition Employee Obligations are not timely paid, and in light of the relatively small expenditure required to do so, the Debtor requests that the notice provisions of Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule 6004(h) be excused, to the extent they are applicable to the relief sought herein.

## VI.    WAIVER OF PAGE LIMIT RESTRICTIONS

51.     Given the complexity issues addressed herein, the Debtor respectfully requests that the fifteen-page limit established by Local Rule 5005-3(D) be waived for this Motion.

## VII.    AUTHORIZATION TO HONOR CHECKS AND ELECTRONIC FUND TRANSFERS

52.     The Debtor currently maintains funds, and/or has sought postpetition financing, sufficient to pay all Prepetition Employee Obligations as they come due in the ordinary course.

The Debtor requests that the Court authorize and direct all applicable financial institutions to process, honor, and pay any and all checks or wire transfer requests, as may be requested by the Debtor to effectuate payment of the Prepetition Employee Obligations, including but not limited to checks issued and wire transfers initiated prior to the Petition Date on account of Prepetition Employee Obligations.

## VIII. <u>NOTICE</u>

53.      Notice of the filing of this Motion and the hearing scheduled therefor has been provided by CM/ECF, overnight delivery, and/or facsimile, on not less than three days' notice, to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) each of the Debtor's 20 largest unsecured creditors pursuant to Federal Rule of Bankruptcy Procedure 1007(d); (c) counsel to BMO Harris Bank, N.A., the Debtor's priority secured lender and primary depository institution; (d) counsel to the U.S. Small Business Administration, the Debtor's subordinated secured lender; and (e) all other parties who have requested notice and service of pleadings via the Court's CM/ECF system in the Chapter 11 Case.

54.      Bankruptcy Rule 2002(a)(2) provides that, "unless the court for cause shown shortens the time or directs another method of giving notice," a motion seeking to use property of the estate other than in the ordinary course of business must be served upon "the debtor, the trustee, all creditors and indenture trustees" on 21 days' notice. Fed. R. Bankr. P. 2002(a)(2). Likewise, this Court's Local Rule 9013-1 requires that a "notice of motion served personally must be served no later than 4:00 p.m. on the third day before the date of presentment." L.R. 9013-1(D)(2). Both of these requirements, however, may be modified at the Court's discretion. *See* Fed. R. Bankr. P. 2002(m) (authorizing the Court to "enter orders designating the manners in

respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by these rules"); *see also* Fed. R. Bankr. P. 2002(a)(2).

55.    As discussed in more detail above, if the Debtor were required to adhere strictly to the notice requirements of the federal and local bankruptcy rules, several pay periods would pass during which the Employees would not be paid. Widespread attrition would result, irreparably harming the Debtor and its business operations. Given the critical and time-sensitive nature of the relief requested herein, the Debtor submits that "cause" exists to shorten and limit the notice requirements applicable to the Motion, and to deem the notice period and parties set forth above and in the attached certificate of service to be adequate and sufficient under the circumstances.

WHEREFORE, Arro Corporation, f/k/a Arro Packaging Company, debtor and debtor in possession herein, respectfully requests the entry of an order in accordance with the foregoing recommendations in the form filed herewith and made a part hereof without further notice, and for such other and further relief as is just.

Respectfully submitted,

ARRO CORPORATION

By: /s/  Steven B. Chaiken
         One of its proposed attorneys

ADAM P. SILVERMAN, ESQ. (ARDC # 6256676)
ERICH S. BUCK, ESQ. (ARDC # 6274635)
STEVEN B. CHAIKEN, ESQ. (ARDC # 6272045)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd, Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for the Debtor**