**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARRO CORPORATION, f/k/a ARRO | ) | Case No. 19-35238 |
| PACKAGING COMPANY | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |
| | ) | **Hearing Date:  December 19, 2019** |
| | ) | **Hearing Time: 11:00 a.m.** |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that on **Thursday, December 19, 2019, at 11:00 a.m.,** we shall appear before the Honorable Janet S. Baer of the United States Bankruptcy Court for the Northern District of Illinois, or any other judge sitting in her place and stead, at Courtroom 615 in the Dirksen Federal Building, 219 S. Dearborn Street, Chicago, Illinois, and then and there present the **MOTION FOR ORDER: (I) AUTHORIZING (A) SECURED POST-PETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364; (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C); AND (III) SHORTENING NOTICE**, a copy of which is hereby served upon you.

ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
HENRY B. MERENS, ESQ. (ARDC #6181695)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for Arro Corporation**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that true and correct copies of this notice and the documents referred to therein were served upon the parties listed on the below service list as indicated on December 16, 2019.

By: <u>/s/  Erich S. Buck</u>
Erich S. Buck, Esq.

### <u>Via CM/ECF</u>

- **Michael L. Gesas**    michael.gesas@saul.com, jurate.medziak@saul.com
- **John W Guzzardo**    jguzzardo@hmblaw.com, ecfnotices@hmblaw.com
- **Aaron L. Hammer**    ahammer@hmblaw.com, ecfnotices@hmblaw.com
- **Patrick S Layng**    USTPRegion11.ES.ECF@usdoj.gov
- **James Patrick Sullivan**    jsulliva@chapman.com
- **Sean P. Williams**    sean.williams@saul.com

### <u>Via FedEx Overnight (unless otherwise indicated)</u>

#### *20 Largest Creditors*

Aerotek, Inc.
3689 Collections Ctr Dr.
Chicago, IL 60693

Alternative Staffing, Inc.
5620 West Cermak Rd.
Cicero, IL 60804

American Express
American Express Tower
200 Vesey Street
New York, NY 10285

Backhaul Direct
1 Virginia Ave., Suite 400
Indianapolis, IN 46204

Batory Foods
1700 Higgins Road, Suite 300
Des Plaines, IL 60018-3800

Bluegrass Dairy and Food, Inc.
606 W. Main St.
Springfield, KY 40069

BREIT Industrial Canyon IL1B03 LLC
c/o Stream Realty – Chicago, LLC
Attn: Property Management
6250 N. River Road, Ste. 6025
Rosemont, IL 60018

BREIT Industrial Canyon IL1B03 LLC
c/o Revantage Corporate Services
Attn: Managing Counsel and Lease Admin.
222 South Riverside Plaza, Suite 2000
Chicago, IL 60606

Cacique de Café Soluvel
Rua Horacio Sabino Coimbra 100
86072-900
Londrina, Parana
Brazil
*via email to pereira@caciqueny.com

Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606

Gierczyk, Inc.
16200 Clinton Street
Harvey, IL 60426

Graphic Packaging International
1500 Riveredge Parkway, Suite 100,
9th Floor
Atlanta, GA 3328

Karlin Foods Corp.
1845 Oak Street, Suite 19
Northfield, IL 60093

Kraft Heinz Company
200 East Randolph Street, Suite 7600
Chicago, IL 60601

Live Electric, LLC
68 Spring Ave
Glen Ellyn, IL 60137

Mercer Foods, LLC
1836 Lapham Drive
Modesto, CA 95354

Onin Group Midwest, LLC
1 Perimeter Park S., Suite 450N
Birmingham, AL 35243

Santa Fe Industrial Investors
One Oakbrook Terrace, Suite 400
Oakbrook Terrace, IL 60181

Sensory Effects Powder Systems
136 Fox Run Drive
Defiance, OH 43512

St. Charles Trading
650 North Raddant Road
Batavia, IL 60510

The Royal Group
2318 Paysphere Circle
Chicago, IL 60674

*Secured Creditors*

SBA – Illinois District Office
500 W. Madison St., Suite 1150
Chicago, IL  60661

United States Attorney's Office
Northern District of Illinois, Eastern
Division
219 S. Dearborn St., 5th Floor
Chicago, IL 60604

TCF Equipment Finance, a division of TCF
National Bank
c/o John Murphy
CT Corporation
208 S. LaSalle St., Ste. 814
Chicago, IL 60604

CHS Inc.
5500 Cenex Drive
Inver Grove Heights, MN 55077

Quincy Recycle Paper Inc.
c/o Kelsey Ley
526 S. 6th St.
Quincy, IL 62301

Massimo Zanetti Beverage USA, Inc.
c/o Kenneth Lancaster
1370 Progress Road
Suffolk, VA 23434

Pinnacle Foods Inc.
c/o John F. Kroeger
399 Jefferson Dr.
Parsippany, NJ  07054

Hitachi Capital America Corp.
Attn: RYAN COLLISON
800 CONNECTICUT Ave.
NORWALK, CT 06854

HYG Financial Services, Inc.
Attn: William J. Mayer

125 High St.
Boston, MA 02110
Toyota Industries Commercial Finance, Inc.
CT Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

Toyota Industries Commercial Finance, Inc.
Attn: David Crandall
8951 Cypress Waters Blvd., Ste. 300
Dallas, TX 75019

Ascentium Capital, LLC
CorpDirect Agents, Inc.
208 S. LaSalle St., Ste 814
Chicago, IL 60604

Ascentium Capital, LLC
Attn: Joel Cappon, Thomas Depping
23970 HIGHWAY 59 N

KINGWOOD, TX 77339
TCF Equipment Finance, Inc.
CT Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

TCF Equipment Finance, Inc.
Attn: William S. Henak
11100 Wayzata BLVD., Ste. 801
Minnetonka, MN 55305

RLC Funding, A division of Navitas Lease
Corp., ISAOA
111 Executive Center Drive, Ste. 102
Columbia, SC 29210

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARRO CORPORATION, f/k/a ARRO | ) | Case No. 19-35238 |
| PACKAGING COMPANY | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |
| | ) | **Hearing Date:  December 19, 2019** |
| | ) | **Hearing Time: 11:00 a.m.** |

**MOTION FOR ORDER (I) AUTHORIZING (A) SECURED POST-PETITION
FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364,
(B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND
(C) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364;
(II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE
4001(C); AND (III) SHORTENING NOTICE**

NOW COMES Arro Corporation, f/k/a Arro Packaging Company, debtor and debtor in possession (the "**Debtor**"), by and through its undersigned proposed counsel and, upon its motion (the "**Motion**"): for the entry of orders pursuant to sections 105, 361, 363, 364, 506 and 507 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (1) authorizing the Debtor to incur post-petition secured financing on an interim and final basis from BMO Harris Bank, N.A. (the "**Lender**"); (2) authorizing the Debtor to use cash collateral; (3) granting adequate protection; (4) setting a final hearing on the Motion to consider the entry of a final order; and (5) shortening notice of the Motion. In support of the Motion, the Debtor respectfully states as follows:

**I.     STATEMENT PERTAINING TO BANKRUPTCY RULE 4001 DISCLOSURES**

This Motion seeks authority for the Debtor to obtain new asset-based financing that will have a maximum borrowing limit in the principal amount of $2,964,545.00, consisting of

1

$2,000,000.00 on an interim basis and an additional $964,545.00 on a final basis.  The Post-Petition Financing (as defined below) will bear interest at the "Base Rate" (discussed below) plus four percent (4%), and will be secured by liens on substantially all assets of the Debtor, which liens will be senior to the pre-existing secured debt of the Debtor.  In addition, the Motion seeks authority to allow the Debtor to use cash collateral, and to provide adequate protection to the Debtor's pre-petition lender.

For ease of reference, the specific disclosures required for this Motion by Bankruptcy Rule 4001(c)(1)(B) and Local Bankruptcy Rule 4001 are set forth in Section IV below on pages 10 – 13 because many of the described terms or parties referred to in those disclosures are defined or explained in the preceding Sections II and III.

## II.    FACTUAL BACKGROUND

### A.    Chapter 11 Case

1.      On December 19, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case (the "**Chapter 11 Case**").  Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate its businesses as a debtor in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Neither a trustee nor a committee of unsecured creditors has been appointed in the Chapter 11 Case.

3.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (K), (M) and (O).  The statutory

predicates for the relief requested herein are sections 105, 361, 363, 364, 506 and 507 of the

Bankruptcy Code.

4.      The nature of the Debtor's business, the factual background relating to the

commencement of the Chapter 11 Case, and further factual support for this Motion, are set forth

in more detail in the *Declaration of Patrick Gaughan  in Support of Chapter 11 Petition, First-

Day Motions, and Certain Second-Tier Motions* (the "**Declaration**") filed on December 16,

2019, and incorporated herein by reference.

B.      <u>**Financing Prior to the Chapter 11 Case**</u>[1]

1.      **BMO Harris Bank, N.A.**

5.      Prior to the Petition Date, the Debtor and the Lender entered into a loan facility

pursuant to the following documents and instruments: (a) Credit Agreement dated June 14, 2017,

between the Debtor and the Lender, and all amendments thereto ("**Pre-Petition Credit**

**Agreement**"); (2) Revolving Note dated December 12, 2019, from the Debtor payable to the

Lender in the original principal amount of $21,735,000.00 (*"***Revolving Loan(s)***"*), which was

issued in substitution and replacement for one or more prior Revolving Loans; (3) Term A Note

dated June 14, 2017, from the Debtor payable to the Lender in the original principal amount of

$1,321,153.00 (*"***Term Loan A***"*); (4) Term B Note dated June 14, 2017, from the Debtor

payable to the Lender in the original principal amount of $197,619.00 (*"***Term Loan B***"*);

(5) Term C Note dated June 14, 2017, from the Debtor payable to the Lender in the original

principal amount of $937,500.00 (*"***Term Loan C***"*); and (6) Term D Note dated June 14, 2017,

from the Debtor payable to the Lender in the original principal amount of $3,543,728.00 (*"***Term**

**Loan D***"*, and together with Term Loan A , Term Loan B, and Term Loan C, the *"***Pre-Petition**

---

[1] Additional details regarding the Debtor's pre-petition secured financing are set forth in Section IV of the Declaration.

**Term Loans**"*, and together with the Revolving Loan, the "**Pre-Petition Loans**, and together with the **Pre-Petition Credit Agreement** and all collateral and ancillary documents executed in connection with the Pre-Petition Loans, including the Security Agreement and the Pledge Agreement (as defined below), the "**Pre-Petition Loan Documents**")[2].

6.      The Pre-Petition Loans and the other "Obligations" (as defined in the Pre-Petition Credit Agreement) of the Debtor owing to the Lender are secured by, among other things, (1) General Security Agreement dated June 14, 2017, between the Debtor and the Lender (the "**Security Agreement**"); and (2) Stock Pledge Agreement dated June 14, 2017, from the Trust[3] to the Lender (the "**Pledge Agreement**").  The Pre-Petition and the other Obligations of the Debtor owing to the Lender are guaranteed up to $2,000,000.00 by the Trust and Patrick Gaughan pursuant to the Guaranty dated June 14, 2017 (the "**Guaranty**")

7.      In connection with the Pre-Petition Credit Agreement, the Revolving Loan, the Term Loans, and the Security Agreement, the Lender filed a UCC-1 Financing Statement with the Illinois  Secretary of State on May 30, 2017, designated as filing number 022726277.

8.      Beginning in June 2019, the Debtor and the Lender entered into a series of five forbearance agreements (collectively, the **Forbearance Agreements**"), with the second through fifth agreements also amending the Pre-Petition Credit Agreement.  In connection with the second through fifth forbearance agreements, the Debtor and the Lender entered into a corresponding series of Revolving Loans which, among other things, increased the Debtor's

---

[2] Given the voluminous nature of the Pre-Petition Loan Documents, copies will be filed separately with the Court and available on PACER; served on any parties in interest that have filed appearances or requests for notices in the Chapter 11 Case; and provided to any parties in interest upon written request to the Debtor's proposed counsel.

[3] The "**Trust**" refers to that certain Patrick Gaughan Declaration of Trust dated July 15, 1996, as amended and restated by that certain Amendment and Restatement of Patrick Gaughan Declaration of Trust dated May 15, 2008.

1057468v2

funding availability under the credit facility from $18,000,000.00 to $21,735,000.00 prior to the Petition Date.

9.      As of the Petition Date, the Debtor believes the indebtedness owing to the Lender under the Pre-Petition Loan Documents aggregates to not less than $26,700,000 (the "**Pre-Petition Obligations**")

10.      As of the Petition Date, the Pre-Petition Obligations are secured pursuant to the Pre-Petition Loan Documents by perfected, valid, binding and non-avoidable first priority liens and security interests granted by the Debtor to or for the benefit of the Lender upon all of the "Collateral" (as defined in the Security Agreement)[4] existing as of the time immediately prior to the Petition Date, and the post-petition proceeds and products thereof (collectively, together with any other property of, among other things, the Debtor's estate in which a lien or security interest has been granted to or for the benefit of the Lender immediately prior to the Petition Date, the "**Pre-Petition Collateral**").

11.      Under the Forbearance Agreements, the Debtor admitted that the Pre-Petition Loan Documents and Pre-Petition Obligations are valid and enforceable and the Debtor waived, and was unaware of, any defenses, setoffs, or counterclaims to the claims of the Lender with respect thereto.

**2.      The United States Small Business Administration**

12.      On November 17, 2010, the Debtor entered into a loan facility with the SBA pursuant to a *Note (CDC/504 Loans)* payable to the SBA in the amount of $1,351,000.00, among other documents ("**SBA Loan No. 1**"), secured by certain machinery and equipment purchased

---

[4]  The Security Agreement defined "Collateral" to include, without limitation, the following assets of the Debtor: Accounts, Chattel Paper, Instruments, Documents, General Intangibles, Letter-of-Credit Rights, Supporting Obligations, Deposit Accounts, Investment Property, Inventory, Equipment, Fixtures, Commercial Tort Claims, Goods, Monies, and proceeds and products of the foregoing.

for new product lines at two of the Debtor's premises. In connection with SBA Loan No. 1, the SBA filed a UCC-1 Financing Statement with the Illinois  Secretary of State on October 12, 2010, designated as filing number 15670487, as subsequently amended.

13.     On July 17, 2012, the Debtor entered into a loan facility with the SBA pursuant to a *Note (CDC/504 Loans)* payable to the SBA in the amount of $4,161,000.00, among other documents ("**SBA Loan No. 2**"), secured by machinery and equipment purchased for a processing room of the Debtor. In connection with SBA Loan No. 2, the SBA filed a UCC-1 Financing Statement with the Illinois Secretary of State on July 17, 2012, designated as filing number 17448005, as subsequently amended.

14.     On February 16, 2017, the Debtor entered into a loan facility with the SBA pursuant to a *Note (CDC/504 Loans)* payable to the SBA in the amount of $978,760.00, among other documents ("**SBA Loan No. 3**"), secured by certain machinery and equipment purchased for new product lines at two of the Debtor's premises. In connection with SBA Loan No. 3, the SBA filed a UCC-1 Financing Statement with the Illinois  Secretary of State on September 20, 2017, designated as filing number 22726277, as subsequently amended.

15.     On September 20, 2017, the Debtor entered into a loan facility with the SBA pursuant to a *Note (CDC/504 Loans)* payable to the SBA in the amount of $3,012,000.00, among other documents ("**SBA Loan No. 4**", together with SBA Loan 1, SBA Loan 2, and SBA Loan 3, the "**SBA Loans**," and together with any other agreements, instruments, financing statements and documents executed in connection therewith, the "**SBA Loan Documents**"), secured by machinery and equipment purchased for a processing room of the Debtor. In connection with SBA Loan No. 4, the SBA filed a UCC-1 Financing Statement with the Illinois  Secretary of State on September 20, 2017, designated as filing number 22726285, as subsequently amended.

1057468v2

16.     As of the Petition Date, the Debtor believes the indebtedness owing to the SBA

under the SBA Loans aggregates to approximately $4,800,000 (the "**SBA Obligations**").

### 3.     Shared Collateral of the Lender and the SBA

17.     On June 6, 2017 and June 13, 2017, the SBA and the Lender entered into two

Subordination Agreements (collectively, the "**Subordination Agreements**").  The Subordination

Agreements, together with other applicable documents under the SBA Loans, provide that: (a)

the SBA's liens are junior to the liens of the Lender on the applicable machinery and equipment

securing the SBA Loans and the Pre-Petition Term Loans (the "**Pre-Petition Shared**

**Collateral**"); and (b) neither the SBA Loans nor the Term Loans may be cross collateralized.

The SBA does not have any security interests in the Pre-Petition Collateral other than the Pre-

Petition Shared Collateral.

### 4.     Other Secured Creditors

18.     In addition to the SBA and the Lender, the Debtor has entered into certain

purchase money security interests with unaffiliated third parties, including but not limited to:

Quincy Recycle Paper, Inc; Toyota Industries Commercial Finance, Inc; and Hitachi Capital

America Corp.

### C.     Need for Post-Petition Financing

19.     The Debtor requires immediate access to interim post-petition financing and use

of cash collateral (as defined by section 363 of the Bankruptcy Code, "**Cash Collateral**")

pursuant to section 364 of the Bankruptcy Code and Bankruptcy Rule 4001.  In the absence of

this immediate access, the Debtor will be unable to continue operating its business, causing

immediate and irreparable loss or damage the Debtor's estate, to the detriment of the Debtor, its

creditors and other parties in interest.  The Debtor does not have sufficient unrestricted cash and

other financing available to operate its business, maintain the estate's properties, and administer

the Chapter 11 Case with a view toward a going-concern sale of substantially all of the Debtor's

assets, absent the relief provided in this Motion.

20.     The use of Cash Collateral alone would be insufficient to meet the Debtor's post-

petition operating needs.  Due to the Debtor's overall precarious financial position, the Debtor is

unable to obtain (1) adequate unsecured credit allowable under sections 503(b)(1) or 364(c)(1) of

the Bankruptcy Code as an ordinary administrative expense, (2) unsecured credit allowable

under section 364(a) or (b) of the Bankruptcy Code, (3) unsecured credit entitled to priority

under section 364(c)(1) of the Bankruptcy Code, or (4) adequate secured credit under section

364(c)(2), (c)(3) or (d)(1), from any source other than the Lender that would be sufficient to

enable Debtor to continue its business operations.  The only feasible source of secured credit

available to the Debtor is the Post-Petition Financing (as hereinafter defined).  The Debtor

requires the Post-Petition Financing to satisfy its immediate critical post-petition liquidity needs.

## III.    <u>RELIEF REQUESTED</u>

### A.    <u>Interim Post-Petition Financing</u>

21.     By this Motion, the Debtor requests the entry of an interim order substantially in

the form filed herewith[5] (the "**Interim Order**")[6], approving the agreement of the Lender to

advance post-petition funds to the Debtor in the aggregate amount of up to $2,964,545.00 (the

"**Post-Petition Financing**").  The Post-Petition Financing shall be governed by the terms of Pre-

Petition Loan Documents as expressly modified by: (a) that certain *Senior Secured, Super-*

---

[5] The Debtor anticipates further negotiation with the Lender, the U.S. Trustee and other parties in interest
over the terms of the Interim Order leading up to the preliminary hearing on the Motion.  As soon as a
proposed final draft of the Interim Order is available, the Debtor intends to file and/or submit to the Court
a redline of the order reflecting any changes to the copy filed with the Motion.
[6] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Interim
Order.

*Priority Post-Petition Financing Amendment to Credit Agreement* dated as of December [__],

2019, between the Debtor and the Lender (the "**DIP Agreement**")[7]; and (b) the Interim Order.[8]

22.     The Debtor requests authority to use the Post-Petition Financing and/or any Cash

Collateral pursuant to the budget (the "**Initial Budget**") attached as <u>Exhibit B</u>  to the Interim

Order and incorporated herein by reference,  from the date of the Interim Order through the date

of the entry of a Final Order (as hereafter defined), as more fully set forth in the Interim Order

(the "**Interim Period**").

### B.     <u>Post-Petition Financing Beyond the Interim Period</u>

23.     The Debtor further requests the entry of a final order (the "**Final Order**") in form

and substance acceptable to the Debtor and the Lender, authorizing continued borrowing by the

Debtor through at least the week ending March 13, 2020, to be considered at a final hearing to be

scheduled by the Court.

### C.     <u>Budget for Post-Petition Financing</u>

24.     The Initial Budget sets forth all projected cash receipts, sales and cash

disbursements (by line item) on a weekly basis for the time period from the Petition Date through

and including the date this Court enters the Final Order.  The Initial Budget may be modified or

supplemented from time to time by additional budgets (covering any time period covered by a

prior budget or covering additional time periods) to which the Lender and the Debtor agree in

their respective discretion (the "**Supplemental Approved Budgets**").

---

[7] The DIP Agreement continues to be negotiated between the Debtor and the Lender, and will be filed with the Court as <u>Exhibit A</u> to the Interim Order and served upon all noticed parties set forth in paragraph 37 of the Motion upon completion or substantial completion of such negotiations, but in any event prior to the preliminary hearing on the Motion. In conjunction with the filing of the DIP Agreement, the Debtor will file and serve a supplemental disclosure summarizing any applicable provisions of the DIP Agreement in accordance with Local Bankruptcy Rule 4001-2(A).

[8] In the event of any inconsistency between the DIP Agreement and the Interim Order, the Interim Order will control.

### D.     <u>Negotiations in Good Faith</u>

25.     Prior to the filing of the Motion, the Lender and the Debtor conducted lengthy, good-faith negotiations with respect to the terms and conditions of the DIP Agreement, the Interim Order and the Initial Budget.

### E.     <u>Final Hearing</u>

26.     The Debtor further requests that the Court set a final hearing on the Motion pursuant to Rule 4001(c)(2) of the Bankruptcy Rules, to consider the entry of the Final Order.

## IV.     <u>FED. R. BANKR. PROC. 4001(c)(1)(B) AND L.R. 4001-2 DISCLOSURES</u>[9]

27.     The following disclosures are made pursuant to Bankruptcy Rule 4001(c)(1)(B) with respect to the terms of the Post-Petition Financing and/or the impact of the relief sought by this Motion:

    a.     <u>Material Repayment Terms of Post-Petition Financing</u>.  The borrowing limit under the Post-Petition Financing is $2,964,545.00, of which $2,000,000.00 will be available to be advanced to the Debtor during the Interim Period.  **Interim Order, at 2; Initial Budget.**  The Post-Petition Financing will bear interest at "Base Rate" (as defined in the Pre-Petition Credit Agreement) plus four percent (4%)  **Interim Order ¶ 5.**  The Lender may terminate the Post-Petition Financing after five (5) business days' written notice as a result of certain enumerated events of default stated in the Interim Order, subject to notice and cure rights and the right to challenge whether a default occurred.  **Interim Order ¶¶ 6, 11(b).**  The Post-Petition Financing shall be repaid through all cash receipts and the net proceeds of section 363 sales being conducted in the Chapter 11 Case before repayment of any of the Pre-Petition Obligations but subject to the prior payment or funding of the "Carve-Out" and "Approved Budget Expenses" (as defined below).  **Interim Order ¶ 17.**  In consideration of the Post-Petition Financing, the Lender shall receive: (i) a closing fee of $200,000, payable upon termination of the Post-Petition Financing; and (ii) a post-petition commitment fee of 0.50% on the undrawn amount of the Post-Petition Financing, which shall accrue from the effective date of the Post-Petition Financing up to termination thereof.  **Interim Order ¶ 5.**

---

[9] References herein to the terms of the Post-Petition Financing, the DIP Agreement or the Interim Order are merely a summary, and to the extent of any conflict between the summaries contained herein and the DIP Agreement or the Interim Order, those latter documents shall control.

1057468v2

b.      Grant of Priority or Liens under § 364 for Post-Petition Financing. Upon entry of the Final Order, the Lender will receive post-petition priming liens and security interests (the "**DIP Liens**") on substantially all of the assets and properties of the Debtor, to secure the Post-Petition Financing (collectively, the "**Collateral**"). **Interim Order ¶ 7.** Under the Interim Order, the DIP Liens exclude avoidance actions arising under chapter 5 of the Bankruptcy Code or the proceeds thereof (the "**Avoidance Actions**").[10] The DIP Liens are subject to the Carve-Out, including Supplemental Fees and Expenses (defined below), and the Approved Budget Expenses. **Interim Order ¶ 13(a).** Upon entry of the Final Order, all obligations under the Post-Petition Financing shall also constitute allowed super-priority claims under section 364(c)(1) of the Bankruptcy Code (the "**Superpriority Claim**"). Under the Interim Order, any Superpriority Claim shall not be payable from Avoidance Actions.[11] **Interim Order ¶ 7(b).** The Superpriority Claim shall be subordinate to: (i) the carve-out for fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), fees payable to the Clerk of the Bankruptcy Court, and professional fees (the "**Carve-Out**"), **Interim Order ¶ 7(b), 13(a)**; (ii) the carve-out for all other expenses under the approved budget(s) (the "**Approved Budget Expenses**"), **Interim Order ¶ 7(b), 15**; and, in the event of termination of the Post-Petition Financing, a carve-out of $200,000 for Supplemental Fees and Expenses, **Interim Order ¶¶ 7(b), 13(a).**

c.      Adequate Protection. The Lender is granted valid, binding, continuing, enforceable fully perfected, first-priority replacement liens on and senior security interest in and to all of the DIP Collateral, subject only to the Carve-Out, the Approved Budget Expenses and the DIP Liens, for any diminution in the value of the Lender's interest in the Pre-Petition Collateral resulting from the sale, lease or use of the Pre-Petition Collateral from and after the Petition Date, other than the priming of the Pre-Petition Collateral by the DIP Collateral. **Interim Order ¶ 8**.

d.      Validity of Pre-Petition Obligations and Pre-Petition Collateral. The Debtor stipulates to the validity of the Pre-Petition Obligations and to the validity and first priority of the liens in the Pre-Petition Collateral to secure such debt. **Interim Order, Recital C(ii).**

e.      Automatic Stay Modification. The Interim Order provides for the modification of the automatic stay upon the Post-Petition Termination Date but subject to notice and cure rights and the right to challenge the occurrence of a post-petition default. **Interim Order ¶¶ 6, 11(b).**

f.      No Plan of Reorganization Deadlines. The Interim Order does not seek relief to establish deadlines for filing a plan or disclosure statement.

---

[10] The Lender has reserved the right to seek DIP Liens on the Avoidance Actions as part of the Final Order.

[11] The Lender has reserved the right to seek payment on any Superpriority Claim from Avoidance Actions as part of the Final Order

g.    <u>Certain Waivers in Interim Order</u>.  The Interim Order waives certain perfection requirements that may exist under applicable non-bankruptcy law pertaining to the priority, perfection and/or validity of the DIP Liens and the Adequate Protection Liens.  **Interim Order ¶ 9.**

h.    <u>Deadlines to Challenge Pre-Petition Obligations or Liens</u>. The ability to challenge the validity, perfection and amount of the liens or claims of the Lender or to otherwise assert any claims against such parties shall be forever discharged and released if such challenge is not initiated by a creditors' committee within 60 days of formation of such committee, or by any party-in-interest within 75 days from entry of the Interim Order. **Interim Order ¶ 25**.

i.    <u>Indemnification of Lender</u>.  The Interim Order does not include any indemnification provisions.  The Pre-Petition Loan Documents contain certain indemnification provisions (e.g. section 9.10 of the Pre-Petition Credit Agreement).

j.    <u>No § 506(c) Waiver</u> .  The Interim Order does not include a waiver of any rights under 11 U.S.C. § 506(c) with respect to the Pre-Petition Obligations, the DIP Obligations, or the Collateral.[12]

k.    <u>No Liens on Avoidance Actions</u> . The Interim Order excludes any liens on or recovery on any Superiority Claim from Avoidance Actions or any proceeds thereof.[13] **Interim Order ¶ 7**.

28.    To the extent not otherwise already disclosed herein, the following are additional disclosures required by Local Bankruptcy Rule 4001-2(A)(2) of certain terms to be contained subject to further negotiation in the Interim Order or the DIP Credit Agreement:

a.    <u>Cross-Collateralization</u>.  Other than with respect to the adequate protection described above, the Pre-Petition Obligations are not secured by the DIP Collateral.

b.    <u>Roll-Up</u>.  All proceeds of Pre-Petition Collateral will be used to pay, in order: (i) payment of any DIP Obligations; and (ii) payment of any Pre-Petition Obligations.  The Interim Order does not deem the Pre-Petition Obligations to be post-petition debt or use the Post-Petition Financing to pay part or all of the Pre-Petition Obligations, other than as provided in 11 U.S.C. § 552(b).  **Interim Order ¶ 17.**

---

[12] The Lender has reserved the right a waiver of any section 506(c) claims as part of the Final Order.
[13] The Lender has reserved the right to seek DIP Liens on and/or Superpriority Claim recovery from the Avoidance Actions as part of the Final Order.

c.  <u>Carve-Out Limitations</u>.  The Interim Order does not provide for different treatment of professionals relative to one another or limit a committee counsel's use of a professional fee carve-out, except that no portion of the Carve-Out, the Obligations, Cash Collateral, Pre-Petition Collateral or DIP Collateral, may be used to contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Pre-Petition Obligations or Post-Petition Obligations or the liens securing the Pre-Petition Obligations or Post-Petition Obligations, or to prosecute or assert any claims or causes of action against the Lender; provided, however, that the committee's professionals may expend up to $25,000 for fees and expenses incurred in connection with the investigation of the stipulations and admissions of the Debtor contained in the Interim Order, including the admissions identified above. **Interim Order ¶ 13(b)**.

d.  <u>Non-Consensual Priming Liens</u>.  The Interim Order does not prime any secured liens to the extent that such liens are senior to the Pre-Petition Liens under applicable law as of the Petition Date. **Interim Order ¶ 7**.

e.  <u>No Lender Liability Declaration</u>.  The Interim Order does not contain a declaration that it does not impose lender liability on any secured creditor, including the Lender.

f.  <u>Joint and Several Liability of Multiple Debtors</u>.  [Not Applicable].

g.  <u>Sale Milestones</u>.  The DIP Agreement contains certain milestones in the Chapter 11 Case related to the sale of substantially all of the Debtor's assets as a going concern, the failure of which to timely achieve constituting a default under the Post-Petition Financing.[14]

29.  Pursuant to Local Bankruptcy Rule 4001-(2)(A)(3) and (A)(4), and to the extent not otherwise described herein, the following is a summary of other essential provisions of the Interim Order:

a.  <u>Use of Post-Petition Financing and the Budget</u> - The proceeds of the Post-Petition Financing shall be used exclusively for the expenditures set forth in the Initial Budget attached the Interim Order as Exhibit B.  **Interim Order ¶ 15.**  Under the DIP Agreement, the Debtor anticipates the Initial Budget will be subject to a permitted variance.[15]

b.  <u>Release</u>.  The Interim Order provides that, conditioned upon entry of a Final Order and subject to the contest period under ¶ 25(a), the Debtor and its estate releases the Lender from all claims and actions relating to Pre-Petition Obligations and the Pre-Petition Loan Documents.  **Interim Order ¶ 23**.

---

[14] *See* supra FN 7.
[15] *See* supra FN 7.

1057468v2

## V.    APPLICABLE AUTHORITY AND JUSTIFICATION FOR RELIEF REQUESTED

30.      If a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, then the court, after notice and a hearing, may authorize the Debtor to obtain credit or incur debt:

> (i)      with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code;
>
> (ii)     secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (iii)    secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

31.      Further, if a debtor is unable to obtain credit otherwise, the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien, commonly called a "priming lien."  11 U.S.C. § 364(d).

32.      Rule 4001(c)(2) of the Bankruptcy Rules governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion.  If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c).  Accordingly, the Court is authorized to grant the relief requested herein.

33.      The terms and provisions of the Post-Petition Financing have been negotiated at arms' length and in good faith.  In addition, the terms and provisions of the Post-Petition

1057468v2

Financing are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtor could obtain the needed post-petition financing.

34.     As is described in the Declaration, the Debtor, having determined that financing was available only under section 364(c) and (d) of the Bankruptcy Code, negotiated the Post-Petition Financing pursuant to its business judgment.  *See* Declaration ¶¶ 85-86.  Provided that this judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its business judgment.  *See In re AMR Corp.*, 485 B.R. 279, 287 (Bankr. S.D.N.Y. 2013) ("In determining whether to approve a debtor's request under section 364, a Court must examine whether the relief requested is an appropriate exercise of the debtor's business judgment."); *see, e.g., In re UAL Corp.*, No. 02-B-48191, 2002 WL 34344253 (Bankr. N.D. Ill. Dec. 11, 2002); *cf. In re Olde Prairie Block Owner, LLC*, 448 B.R. 482, 492 (Bankr. N.D. Ill. 2011) (observing that section 364 does not impose a specific standard, but due to the eventual need to use borrowed funds under section 363 of the Bankruptcy Code, the debtor must provide an "articulated business justification") (internal citation omitted).

35.     As is described in the Declaration, the Post-Petition Financing provides significant additional liquidity to the Debtor and thus will enable the Debtor, among other things, to (a) maintain the continuity of its operations, and (b) maximize the value of its businesses and properties.  Such financing is the sole means of preserving and enhancing the Debtor, its business and its assets as a going concern.

36.     Accordingly, the Debtor believes that the approval of the Post-Petition Financing is in the best interests of its estate, its creditors and all parties-in-interest, and that the Court should therefore approve the Interim Order and schedule a final hearing to consider the entry of

1057468v2

the Final Order.  Moreover, for the reasons hereinabove stated, the Lender should be accorded

the benefits inuring under sections 361 and 364 of the Bankruptcy Code.

### C.    <u>**NOTICE OF THE MOTION**</u>

37.    Notice of the filing of this Motion and the hearing scheduled therefor has been

provided by CM/ECF, overnight delivery, and/or facsimile to: (a) the Office of the United States

Trustee for the Northern District of Illinois; (b) the Debtor's 20 largest unsecured creditors

pursuant to Federal Rule of Bankruptcy Procedure 1007(d); (c) respective counsel to the

Debtor's secured lenders, BMO Harris Bank, N.A. and the United States Small Business

Administration; (d) the United States Department of Justice; (e) all other parties with liens of

record on assets of the Debtor as of the Petition Date; and (f) all other parties who have requested

notice and service of pleadings via the Court's CM/ECF system in any of the Chapter 11 Case.

38.    Local Bankruptcy Rule 9013-1 requires that a "notice of motion served personally

must be served no later than 4:00 p.m. on the third day before the date of presentment." Local

Bankr. R. 9013-1.D(2).  As reflected on the certificate of service accompanying this Motion,

certain of the 20 largest unsecured creditors will be served with notice of the Motion by

overnight delivery on Tuesday, December 17, 2019.  Such notice will fall just shy of the three

days' notice required under the applicable Local Bankruptcy Rule.

39.    Given the critical nature of the relief requested in the Motion, that such relief is

only being sought at the preliminary hearing on an interim basis, and in light of the irreparable

harm the Debtor would suffer absent such relief, the Debtor requests that the Court deem the

notice provided hereof as sufficient and/or the notice requirements under Local Bankruptcy Rule

9013-1 waived or reduced accordingly.

16

**WHEREFORE**, the Debtor respectfully requests that the Court authorize the Post-

Petition Financing on an interim basis, enter the Interim Order, set a final hearing to consider the

entry of the Final Order, and grant such other and further relief as is just and proper, consistent

with the terms hereof.

Respectfully Submitted,

ARRO CORPORATION

By: /s/ Erich S. Buck
                 One of its proposed attorneys

ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
HENRY B. MERENS, ESQ. (ARDC #6181695)
ERICH S. BUCK, ESQ. (ARDC #6274635)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Proposed Counsel for Arro Corporation**