**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ARRO CORPORATION, f/k/a ARRO | ) | Case No. 19-35238 |
| PACKAGING COMPANY, | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING (A) SECURED POST-PETITION**
**FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364,**
**(B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND**
**(C) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364;**
**(II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE**
**4001(C); AND (III) SHORTENING NOTICE**

Upon the motion (the *"Motion"*) dated December 16, 2019, of Arro Corporation (the

*"Debtor"*) in the above-captioned case (a) seeking this Court's authorization pursuant to

sections 105, 361, 363(c), 363(e), 364(c) and 364(d) of Title 11 of the United States Code, 11

U.S.C. §§ 101, *et seq.* (as amended, the *"Bankruptcy Code"*) and Rules 2002, 4001(c), 6004 and

9014 of the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*), and Rules 4001-2

and 5005-3(D) of the Local Rules for the United States Bankruptcy Court for the Northern

District of Illinois (the *"Local Rules"*) for the Debtor, *inter alia,* (i) to obtain post-petition

financing (the *"Post-Petition Financing"*), up to an aggregate principal amount not to exceed

$2,964,545.00 at any time outstanding, plus accrued interest on the aggregate principal amount

from BMO Harris Bank N.A. (the *"Lender"*), which would be extended to the Debtor; (ii) to

grant the Lender first priority liens and security interests in all of the Debtor's currently owned

and after acquired property to secure the Debtor's obligations under the Post-Petition Financing

and (iii) to grant liens, and accord the Lender a super priority administrative claim pursuant to

section 364(c)(1) of the Bankruptcy Code in respect of all obligations under the Post-Petition

Financing with priority in payment with respect to such obligations over any and all

administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described below and specifically excepting and subject and subordinate to the Carve-Out (as defined below in paragraph 13 hereof) and the Approved Budget Expenses (as defined below in paragraph 15 hereof); (b) seeking this Court's authorization to use the Lender's cash collateral within the meaning of Bankruptcy Code § 363(a)(the *"Cash Collateral"*), pursuant to Bankruptcy Code § 363(c), and to provide adequate protection pursuant to Bankruptcy Code §§ 361, 363(e) and 364(d) to the Lender; (c) seeking a preliminary hearing (the *"Preliminary Hearing"*) on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001 (this *"Interim Order"*) authorizing the Debtor to borrow from the Lender under the Post-Petition Financing up to an aggregate of $2,000,000 at any time outstanding on an interim basis upon entry of the Interim Order, plus accrued interest on the aggregate principal amount, upon the terms and conditions set forth in this Interim Order, pending the Final Hearing referred to below; (d) after an interim hearing on the Post-Petition Financing held on December 19, 2019 (the "*Interim Hearing")*, requesting that a final hearing (the *"Final Hearing"*) be scheduled by this Court to consider entry of a final order (the *"Final Order"*), authorizing upon entry of the Final Order on a final basis the Post-Petition Financing in the total aggregate amount of $2,964,545.00 at any time outstanding; and (e) requesting that notice of the Motion be shortened under the circumstances, together with all other rights and remedies requested in the Motion.

It appearing that due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the *"Notice"*) was served by the Debtor in accordance with Bankruptcy Rule 4001(c) and Local Rule 4001-2 on: (i) the Lender and its counsel, (ii) the United States Small Business Administration (*"SBA"*) and its counsel, (iii) all other parties with liens of record on assets of the Debtor as of the Petition Date, (iv) the Office of the United States Trustee of the Northern District of Illinois (the *"U.S. Trustee"*), (v) the United States Department of Justice,

(vi) the twenty (20) largest unsecured creditors of the estate and (vii) any other party that has requested notice pursuant to Bankruptcy Rule 2002, all as more fully set forth in, and evidenced by, the Certificate of Service on file herein (collectively, the *"Noticed Parties"*).

This Court having reviewed the Motion and any responses and objections thereto, the *Declaration of Patrick Gaughan  in Support of Chapter 11 Petition, First-Day Motions, and Certain Second-Tier Motions*, and the other filings and pleadings made by the Debtor, the evidence and testimony presented at the Interim Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]:**

A.     On December 13, 2019 (the *"Petition Date"*), the Debtor filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code.  The Debtor is in possession of its property, and operating and managing its business, as Debtor-in-Possession pursuant to Bankruptcy Code §§ 1107 and 1108 (the "*Chapter 11 Case*").

B.     This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §  1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Consideration of the Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (D), (K), (M) and (O), and the Debtor confirms its consent to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[1] Findings of Fact shall be construed as Conclusions of Law and Conclusions of Law shall be construed as Findings of Fact, pursuant to Bankruptcy Rule 7052.

C.    Subject only to the rights of parties in interest that are specifically set forth in paragraph 25, the Debtor, on its behalf and on behalf of the estate, admits, stipulates, acknowledges, and agrees as follows:

(i)    The Lender and the Debtor are parties to that certain Credit Agreement dated as of June 14, 2017, under which the Debtor borrowed on a revolving loan and four separate term loans (as amended, supplemented or otherwise modified prior to the commencement of the Chapter 11 Case, the *"Pre-Petition Credit Agreement"*) and all collateral and ancillary documents executed in connection therewith (the *"Pre-Petition Loan Documents"*).  Unless otherwise specified in this Interim Order, all capitalized terms used but not defined herein, shall have the meanings given in the Motion or the Pre-Petition Credit Agreement, as the case may be.

(ii)    In accordance with the terms of the Pre-Petition Loan Documents, the Debtor is truly and justly indebted to the Lender under the Pre-Petition Credit Agreement, without defense, counterclaim or offset of any kind, and that as of the Petition Date the outstanding Secured Obligations as defined in the Pre-Petition Credit Agreement totaled not less than $26,700,000 (the *"Pre-Petition Obligations"*), exclusive of all accrued and unpaid interest, costs, expenses, fees, and Treasury Services Obligations owed to the Lender pre-petition. For purposes hereof, the principal balance of loans and advances under the Pre-Petition Credit Agreement shall be referred to herein as the *"Pre-Petition Loans"*. Subject in all respects to the rights of third parties in paragraph 25 hereof, the Debtor further acknowledges, agrees and stipulates that (a) the Pre-Petition Liens (as defined below) (1) are valid, binding, enforceable and perfected liens in the Pre-Petition Collateral (as defined below), (2) were granted to the Lender pre-petition for fair consideration and reasonably equivalent value, and (3) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or

applicable non-bankruptcy law; and (b)(1) all of the Pre-Petition Obligations constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the Pre-Petition Loan Documents, (2) no setoffs, recoupments, offsets, defenses or counterclaims to any of the Pre-Petition Obligations exist in favor of the Debtor, and (3) no portion of the Pre-Petition Obligations or any payments made to or for the benefit of the Lender pre-petition are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii)    By reason of the Pre-Petition Loan Documents, the Pre-Petition Obligations are secured by enforceable liens and security interests (the *"Pre-Petition Liens"*) granted by the Debtor to the Lender, upon and in substantially all tangible and intangible assets and property of the Debtor, now existing or hereinafter acquired, including, without limitation, all cash and cash equivalents, and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, securities (whether or not marketable), properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, bank accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds (provided, however, that to the extent that any lease prohibits the granting of a lien thereon, or otherwise prohibits hypothecation of the leasehold interest, then in such event a lien only on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests), patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, permits, franchise rights, capital stock and other equity interests of subsidiaries, tax and other refunds and proceeds of all tax credits,

insurance or other proceeds, commercial tort claims, causes of action, and all other property or
"property of the estate" (as defined in section 541 of the Bankruptcy Code) of any kind or nature,
real or personal, or mixed, now existing or hereafter acquired or created, and all rents, products,
substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the
foregoing, wherever located, to the extent, and as specifically set forth in the Pre-Petition Credit
Agreement (the *"Pre-Petition Collateral"*).

(iv)    The Lender and the SBA, and the Debtor are parties to those certain
Subordination Agreements dated June 6 and 13, 2017, among other documents (the
*"Subordination Agreements"*). Pursuant to the terms of the Subordination Agreements, each of
the parties thereto has been properly notified by the Lender of the existence of certain Events of
Default under the Pre-Petition Loan Documents.  As a result, pursuant to the terms of the
Subordination Agreements, such subordinated parties may not ask, demand, sue for, accept or
receive, and Debtor may not pay to such subordinated parties, any payment of any amounts owed
under an SBA Loan (as defined in the Subordination Agreement) (the "*Subordinated Debt*") to
the extent provided under the applicable Subordination Agreement(s).

D.    The Debtor does not have sufficient available sources of working capital and
financing to carry on the operation of its businesses without the Post-Petition Financing and the
use of the Lender's Cash Collateral. The Debtor urgently requires financing and access to the
Cash Collateral to (a) fund this Chapter 11 Case, (b) sell its business as a going concern and/or
(b) facilitate an orderly liquidation of the Debtor's food processing business and a proposed
compromise of the Debtor's unsecured obligations.  In addition, the Debtor's critical need for
financing is immediate. In the absence of the Post-Petition Financing and such use of the Cash
Collateral, the Debtor will no longer be able to operate as a going concern, and pursuit of a sale

of the Debtor's business as a going concern would not be possible and serious and irreparable harm to the Debtor and its estate would occur.

      E.    Given the Debtor's current financial condition and capital structure, the Debtor is unable to obtain sufficient unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense.  Financing on a post-petition basis is not otherwise available without the Debtor granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described below, and securing such indebtedness and obligations with the security interests in and the first liens upon the property described below upon the consent of Lender to the priming of its prepetition liens and security interests pursuant to Bankruptcy Code § 364(d) and the terms of this Interim Order. The Debtor does not have the resources to secure such funding over the objection of the Lender, and the Lender has indicated it will not consent to such financing.

      F.    Based on the record presented to this Court by the Debtor, it appears (and the Debtor and the Lender have stipulated) that the Post-Petition Financing has been negotiated in good faith and at arm's length between the Debtor and the Lender, and any credit extended and loans made to the Debtor pursuant to this Interim Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code § 364(e).

      G.    Based on the record before this Court, it appears (and the Debtor and the Lender have stipulated) that the terms of this Interim Order, including, without limitation, the terms of the Post-Petition Financing, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

H.    The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2(B). The permission granted herein to use Cash Collateral and enter into the Post-Petition Financing and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its immediate entry will, among other things, allow for the Debtor's business to continue to operate and facilitate the sale of Debtor's business as a going concern.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Preliminary Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.    *Motion Granted.*  The Motion is granted as set forth herein.

2.    *Authorization.*   The Debtor is expressly authorized and empowered to (i) borrow money, use Cash Collateral, and perform its obligations pursuant to the provisions of this Interim Order and (ii) enter into that certain *Senior Secured Super Priority Post Petition Financing Amendment to Credit Agreement (the "DIP Agreement")* attached hereto as <u>Exhibit A</u>, the Pre-Petition Credit Agreement, and such additional documents as may be reasonably necessary or required to evidence its obligations to the Lender or to carry out the terms of the DIP Agreement (the "*DIP Loan Documents*"), to consummate the terms and provisions of the Motion and this Interim Order and to evidence perfection of the liens and security interests to be given to the Lender pursuant hereto and thereto; *provided*, and to the extent, that such DIP Loan Documents are consistent with this Interim Order. All post-petition loans and all other indebtedness and obligations incurred on or after the Petition Date by the Debtor to the Lender pursuant to this Interim Order and the DIP Loan Documents (including principal, accrued and unpaid interest,

and costs and expenses) are subsequently referred to herein as the *"DIP Obligations,"* and, together with the Pre-Petition Obligations, as the *"Obligations."*

3.    *Borrowings; Use of Cash Collateral.*   Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, (a) the Lender hereby consents to the Debtor's use of the Cash Collateral in accordance with the terms hereof and (b) the Lender will make post-petition loans to the Debtor in accordance with the Approved Budget(s), as defined in and in accordance with the provisions of paragraph 14 hereof.

4.    *Existing Events of Default.*   Nothing herein or in any of the DIP Loan Documents shall constitute or be deemed to constitute a waiver by the Lender of any existing or future Events of Default, including, without limitation, the Events of Default arising from the commencement of the Chapter 11 Case. Without prejudice to, or waiver of, the Lender's rights and remedies against the Debtor in respect of any Events of Default other than the Existing Defaults (as defined below in this paragraph), the Lender agrees to forbear from foreclosing its liens on any DIP Collateral (as defined below in paragraph 7 hereof), to seek to recover the Pre-Petition Obligations or otherwise take enforcement action against the Debtor based solely on any Event of Default which occurred prior to the entry of this Interim Order and of which the Lender had actual knowledge as of such date or which arose as a result of the filing of the Chapter 11 Case that are stayed pursuant thereto (collectively, the *"Existing Defaults"*); *provided* that, (a) subject to the provisions of paragraph 11 hereof, such forbearance shall terminate upon the earlier of (i) the occurrence of any Post-Petition Default (as defined in paragraph 6 hereof) or (ii) the Post-Petition Termination Date (also as defined in paragraph 6 hereof), and (b) except as otherwise expressly set forth herein, the automatic stay shall continue to apply with respect to all assets of the Debtor's estate.

5.     *Interest, Fees, Costs and Expenses.*  All post-petition loans shall bear interest at the
rate per annum equal to the sum of the Lender's Base Rate plus four percent (4%)(computed on
the basis of a year of 360 days for the actual number of days elapsed), *provided* that during the
existence of any default under the Post-Petition Financing that such interest shall be increased by
an additional three percent (3%). The Lender shall be entitled to recover all of its reasonable out-
of-pocket expenses, including audit expenses, plus any additional out-of-pocket expenses, and
including reasonable consultants', attorneys' and paralegals' fees, costs and expenses incurred in
connection with the Obligations to the extent provided in the Pre-Petition Credit Agreement or
the DIP Loan Documents. In consideration for providing the Post-Petition Financing, the Lender
will be entitled to receive: (a) a closing fee of $200,000 as described more fully in Section 2.3 of
the DIP Agreement, which fee shall be fully earned on the date on which the DIP Loan
Documents become effective and payable on the Post-Petition Termination Date; and (b) a post-
petition commitment fee of 0.50% on the undrawn amount of the Post-Petition Financing as
described more fully in Section 2.3 of the DIP Agreement, which fee shall accrue from the date
on which the DIP Loan Documents become effective to but excluding the Post-Petition
Termination Date.

6.     *Termination of Post-Petition Credit.*  (a) The Lender's willingness to make loans
hereunder and the Lender's consent to the Debtor's use of Cash Collateral shall immediately and
automatically terminate (the "*Post-Petition Termination*") (except as the Lender may otherwise
agree in writing in its sole discretion), and all Obligations shall be immediately due and payable
in cash (except as the Lender may otherwise agree in writing in its sole discretion) except that,
with respect to 6b(iv), 6b(xi), 6b(xii), 6b(xxii) and 6b(xxiii) hereof, upon the expiration of five
(5) days' written notice and opportunity to cure from the Lender to (i) counsel for the Debtor, (ii)
the U.S. Trustee, (iii) counsel for the parties to the Subordination Agreements referred to in

Recital (C)(v) above, and (iv) counsel for the Committee (if appointed), (the "*Notice and Cure*

*Rights*") *of* any of the following events:

    (b)      (i)      the date of final indefeasible payment and satisfaction in full in cash of the Obligations;

    (ii)      the effective date of any confirmed plan of reorganization or liquidation in the Chapter 11 Case;

    (iii)      the consummation of the sale or other disposition of all or substantially all of the assets of the Debtor, provided, for the avoidance of doubt, that neither the sale nor orderly liquidation of the Debtor's food processing business shall constitute a Post-Petition Default for purposes of this subparagraph 6(iii);

    (iv)      the occurrence of any material violation by the Debtor of this Interim Order (including, but not limited to, the Debtor's failure to adhere to the Approved Budget as set forth in paragraph 15 of this Interim Order or violation of the covenants set forth in paragraph 16 of this Interim Order) or the Final Order, or any Event of Default (as defined in the Pre-Petition Credit Agreement) other than the Existing Defaults;

    (v)      the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case into a case under chapter 7 of the Bankruptcy Code;

    (vi)      a trustee or an examiner with enlarged powers (beyond those set forth in § 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of the Debtor is appointed in the Chapter 11 Case without the prior written consent of the Lender (which consent may be withheld in its sole discretion), or Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of the Lender (which consent may be withheld in its sole discretion);

    (vii)      this Interim Order or the Final Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Lender (which consent may be withheld in its sole discretion);

    (viii)      this or any other Court enters an order or judgment in this Case modifying, limiting, subordinating or avoiding the priority of any of the Obligations or the perfection, priority or validity of the Lender's pre-petition liens or post-petition liens on any Pre-Petition Collateral or DIP Collateral (as defined below) or imposing, surcharging or assessing against the Lender or its claims or any Pre-Petition Collateral or DIP Collateral any costs or expenses, whether pursuant to § 506(c) of the Bankruptcy Code or otherwise;

    (ix)      the Debtor files any application for approval or allowance of, or any order is entered approving or allowing, any administrative expense claim in the Chapter 11

Case, having any priority over, or being *pari passu* with, the super administrative priority of the Obligations, other than the Carve-Out and the Approved Budget Expenses;

(x)    any motion or application is filed by or on behalf of the Debtor in the Chapter 11 Case seeking the entry of an order, or an order is entered in the Chapter 11 Case, approving any subsequent debtor-in-possession facility for borrowed money or other extensions of credit unless such subsequent facility and such order expressly provide for the indefeasible payment and complete satisfaction in full in cash to the Lender of all DIP Obligations prior to, or concurrently with, any initial borrowings or other extensions of credit under such subsequent facility[2];

(xi)    the Debtor's failure to obtain entry of a Final Order within 30 days after entry of the Interim Order;

(xii)    the Debtor's failure to timely achieve any of the "Milestones", set forth in the DIP Agreement, unless consented to in writing by the Lender;

(xiii)    a plan of reorganization or liquidation is proposed which does not provide for termination of the commitment under the Post-Petition Financing;

(xiv)    any other superpriority administrative expense claim or lien senior to or legally required super-priority liens are *pari passu* with the Obligations, or the DIP Liens (as defined below), shall be granted, approved, imposed, or otherwise created, other than the Carve-Out and the Approved Budget Expenses;

(xv)    the Debtor seeks to obtain additional financing under section 364(c) or 364(d) of the Bankruptcy Code or to grant any lien other than liens permitted under the DIP Loan Documents without the prior written consent of the Lender;

(xvi)    the Debtor files, or any representative of Debtor's estate files, any action challenging the validity, perfection, priority, extent, or enforceability of the DIP Loan Documents or the liens and claims granted thereunder;

(xvii)    the Debtor commences any action against the Lender with respect to the Pre-Petition Obligations including, without limitation, any action to avoid, modify, dispute, challenge, or subordinate any of the Pre-Petition Obligations or any Pre-Petition Liens, or entry of an order in any action by any other party granting such relief;

---

[2] Nothing in this Interim Order shall constitute, or be deemed to constitute, consent by the Lender to the priming of its Pre-Petition Liens by liens securing the debtor-in-possession facility other than the Post-Petition Financing.

(xviii)    the entry of an order dismissing this Case that does not provide for the termination of the commitment under the DIP Loan Documents and payment in full of the Obligations in cash prior to dismissal;

(xix)    any Pre-Petition Collateral or DIP Collateral becoming subject to entry of a Court order granting or authorizing surcharge or marshaling;

(xx)    the entry of an order of the Court granting relief from the automatic stay with respect to any Pre-Petition Collateral or DIP Collateral, or any other assets of the Debtor that have an aggregate value equal to or exceeding $25,000;

(xxi)    if any material contract of the Debtor is rejected or otherwise terminated (other than in accordance with its terms) or any property of the Debtor having an aggregate value equal to or exceeding $25,000 is sold in each instance, without the express written consent of the Lender;

(xxii)    Debtor's failure to perform, in any respect, any of the  material terms, conditions or covenants set forth in the DIP Loan Documents or its obligations under this Interim Order; or

(xxiii)    any other Event of Default under the DIP Loan Documents.

(individually, a *"Post-Petition Default"* and collectively, the *"Post-Petition Defaults"*)(the date following the occurrence of a Post-Petition Default, or the expiration of the Notice and Cure Rights (if applicable) shall be hereafter referred to as the "*Post-Petition Termination Date*")

7.    *Security for Indebtedness.*  (a) The Lender is hereby granted as security for the DIP Obligations, pursuant to §§ 363, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, a valid and perfected first lien (the "*DIP Liens*") on all present and after-acquired tangible and intangible, personal and real property of the Debtor of any nature whatsoever, including, without limitation, all cash contained in any account maintained by the Debtor, all deposit accounts, including any deposit account that holds adequate assurance deposits of the Debtor pursuant to § 366, all causes of action existing as of the Petition Date other than any and all causes of action under Chapter V of the Bankruptcy Code and all proceeds thereof (the "*Avoidance Actions*") and the proceeds thereof (collectively with all proceeds and products of any or all of the foregoing, the "*DIP Collateral*"), and in connection therewith shall take all actions to establish and

maintain the Lender as a lender's loss payee and an additional named insured or similar status on all current or subsequently procured insurance coverages issued in favor of the Debtor; *provided, however*, that the DIP Liens shall be junior in priority to any valid, perfected and unavoidable liens to the extent that such liens are senior to the Pre-Petition Liens under applicable law as of the Petition Date, including any liens that are properly perfected after the Petition Date pursuant to § 546(b). The Lender at its option may release at any time from its liens and security interests any assets determined by the Lender to have a risk of environmental liabilities which the Lender in its sole discretion deems unacceptable.  Any security interest or lien upon the DIP Collateral which is avoided or otherwise preserved for the benefit of Debtor's estate under § 551 or any other provision of the Bankruptcy Code shall be subordinate to the DIP Liens.  For avoidance of doubt, the DIP Liens expressly exclude the Avoidance Actions.[3]

(b)    For all DIP Obligations arising under this Interim Order, the Lender is granted an allowed super-priority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, whether now in existence or hereafter incurred by the Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia* sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 364(c)(1), 546(c), 726 or 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "*Superpriority Claim*"), *provided, however*, that the Superpriority Claim shall be subject to the payment of the Carve-Out and the Approved Budget Expenses incurred, accrued, unpaid or otherwise payable prior to the Post-Petition Termination Date in accordance

---

[3] The Lender intends to expand the DIP Liens in the Final Order to encompass the Avoidance Actions.

with this Interim Order. The Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, shall be against the Debtor, and shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor, subject to the limitations provided herein. Notwithstanding anything herein to the contrary, the Superpriority Claim shall not be recoverable from the Avoidance Actions. [4]

(c)    All Cash Collateral arising from Pre-Petition Collateral (including as provided and set forth under section 552(b) of the Bankruptcy Code) (the "*Pre-Petition Cash Collateral*") subject to the liens granted by the Debtor shall be deemed to be collateral for the Pre-Petition Obligations (as defined in the Pre-Petition Credit Agreement) of the Debtor, as well as the obligations and indebtedness of the Debtor hereunder. All Cash Collateral arising from the DIP Collateral (the "*Post-Petition Cash Collateral*") subject to the liens granted by the Debtor shall be deemed to be collateral for the DIP Collateral and the Adequate Protection Claims, as defined and in the manner set forth under paragraph 8.

8.    *Adequate Protection for Use of Cash Collateral.* As adequate protection for the Lender's consent to the use of Cash Collateral, the Lender is hereby granted valid, binding, continuing, enforceable fully perfected, first-priority replacement liens on and senior security interest in and to all of the DIP Collateral (the "*Adequate Protection Liens*"), subject only to the Carve-Out, the Approved Budget Expenses and the DIP Liens, for any diminution in the value of the Lender's interest in the Pre-Petition Collateral including the Pre-Petition Cash Collateral resulting from the sale, lease or use of the Pre-Petition Collateral from and after the Petition

---

[4] The Lender intends to expand the DIP Liens in the Final Order to cover the Superpriority Claims.

Date, other than the priming of the Pre-Petition Collateral by the DIP Collateral (the "*Adequate Protection Claim*").

9.  *Perfection of New Liens.*  All liens and security interests on or in the DIP Collateral and the Adequate Protection Liens granted to the Lender by this Interim Order and the DIP Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; *provided, however,* that notwithstanding the provisions of § 362 of the Bankruptcy Code, (i) the Lender may, at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtor's expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as the Lender may require, and (ii) the Lender may require the Debtor to deliver to the Lender any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and the Debtor is directed to cooperate and comply therewith. If the Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if the Lender, in accordance with the DIP Loan Documents, shall elect to take possession of any DIP Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements or similar documents, or taking possession, shall be deemed to have been filed or recorded, or taken, in the Chapter 11 Case, as of the entry of this Interim Order but with the priorities as set forth herein. The Lender may (in its discretion) but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any county or other

jurisdiction in which the Debtor has any real or personal property and such filing or recording shall constitute further evidence of perfection of the Lender's interests in the DIP Collateral.

10.    *Waiver.*  The Debtor and the estate (and any party in interest acting on behalf of the Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right, (a) without the Lender's prior written consent (which may be withheld in its sole discretion), or (b) without prior indefeasible payment and satisfaction in full in cash of the DIP Obligations in this Interim Order and, subject to the entry of a Final Order, the Obligations: (i) to grant or impose, or request that the Court grant or impose, under § 364 of the Bankruptcy Code or otherwise, liens on or security interests in any DIP Collateral, which are *pari passu* with or superior to the Lender's liens on and security interests in such DIP Collateral, other than the Carve-Out; (ii) to return goods pursuant to § 546(c) of the Bankruptcy Code to any creditor of the Debtor or to consent to any creditor taking any setoff against any of such creditor's pre-petition indebtedness based upon any such return pursuant to § 553(b)(1) of the Bankruptcy Code or otherwise, unless otherwise directed by Court order; or (iii) to modify or affect any of the rights of the Lender under this Interim Order or any DIP Loan Documents by any order entered in this Case or any subsequent or superseding Case, including, without limitation, any conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto (collectively, a *"Successor Case"*).

11.    *Modification of Automatic Stay; Other Remedies.*  (a)  Except as set forth in subparagraph (b) of this paragraph, which governs any action by the Lender to foreclose on its liens on any DIP Collateral or to exercise any other default-related remedies (other than those specifically referenced in the next sentence), the automatic stay pursuant to § 362 of the Bankruptcy Code is hereby vacated as to the Lender to permit it to perform in accordance with, and exercise, enjoy and enforce its rights, benefits, privileges and remedies pursuant to this

Interim Order and the other DIP Loan Documents without further application or motion to, or order from, the Court. Except as set forth in subparagraph (b) of this paragraph, the Lender is hereby granted leave, among other things, to (i) receive and apply payments of the DIP Obligations and collections on and proceeds of the Pre-Petition Collateral and the DIP Collateral to the DIP Obligations in the manner specified in this Interim Order and the DIP Loan Documents, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (iii) charge and collect any interest, fees, costs, and expenses and other amounts accruing at any time under the DIP Loan Documents or this Interim Order as provided therein, (iv) to give the Debtor any notice provided for in any of the DIP Loan Documents or this Interim Order, and (v) cease making loans or other extensions of credit and/or suspend or terminate any obligation of the Lender to make loans or other extensions of credit under the DIP Loan Documents or this Interim Order solely from and after the Post-Petition Termination Date.

(b)    Upon the occurrence of the Post-Petition Termination Date, the Debtor's ability to use Cash Collateral and proceeds of the Post-Petition Financing shall terminate without notice, and the Lender shall have immediate relief from the automatic stay to foreclose upon and exercise any and all of its rights and remedies with respect to any or all of the DIP Collateral and otherwise enforce the DIP Loan Documents, *provided that*, with respect to any Post-Petition Default, during the pendency of the Notice and Cure Rights, the Debtor and the Committee (if appointed) shall be entitled to an emergency hearing with the Court and, at such hearing, the Debtor shall be limited to contesting whether the relevant Post-Petition Default has occurred and is continuing. Unless the Bankruptcy Court orders otherwise, (x) the automatic stay, as to the Lender, shall be automatically terminated at the end of such notice period, without further notice, hearing or order, and (y) the Debtor shall cooperate with the Lender, to effect an orderly

liquidation of the DIP Collateral on terms and conditions acceptable to the Lender.  The Debtor shall immediately provide notice to the Lender (with a copy to counsel to the Committee) of the occurrence of any Post-Petition Default.  Notwithstanding anything herein to the contrary, the rights of the Lender upon the occurrence of the Post-Petition Termination Date shall be expressly subject to the payment of, and funding made available from the Lender or any proceeds of sale: (i) for all fees and expenses incurred, accrued, unpaid or otherwise payable under the Carve-Out, including the Supplemental Fees and Expenses (as defined in paragraph 13 hereof); and (ii) for all incurred, accrued, unpaid or otherwise payable Approved Budget Expenses.

12.     *Priority Claims.*  Subject to the Carve-Out and the Approved Budget Expenses, the DIP Obligations shall have the highest administrative priority under § 364(c)(l) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise, whether incurred in the Chapter 11 Case or any Successor Case, and shall at all times be senior to the rights of the Debtor, any successor trustee or estate representative in the Chapter 11 Case or any Successor Case.  Nothing in this Interim Order or the Approved Budget(s) or any other budget shall constitute the consent by the Lender to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Approved Budget or any other budget) against the Lender, its claims or its collateral under § 506(c) of the Bankruptcy Code or otherwise.[5]

13.     *Carve-Out.*  (a) The Lender's liens on and security interests in the DIP Collateral or the Pre-Petition Collateral and its administrative expense claims under sections 364(c)(1) or

---

[5] The Lender intends to seek a 506(c) waiver in the Final Order.

507(b) of the Bankruptcy Code, the liens securing the Subordinated Debt (as such term is defined in the Subordination Agreements), and any section 507(b) claims granted pursuant to this Interim Order or the Final Order shall be subject only to: (i) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); (ii) fees payable to the Clerk of this Court; (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, fees and disbursements in the amount set forth in the Approved Budget(s) approved and allowed by this Court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code incurred by persons or firms retained by the Debtor under sections 327, 328 or 363 of the Bankruptcy Code (collectively, the *"Debtor Professionals"* and, together with the Committee Professionals, as defined below, the *"Professional Persons"*), less the sum of all unused pre-petition retainers as of the Petition Date that are not permitted by Order of the Bankruptcy Court to be retained by the Debtor Professionals after the Petition Date; (iv) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and disbursements approved and allowed by this Court pursuant to sections 326, 328, 330, or 331 of the Bankruptcy Code incurred by the Committee or its professionals pursuant to sections 328 or 1103 of the Bankruptcy Code (the *"Committee Professionals"*), in the amounts set forth in the Approved Budget(s); and (v) from and after the occurrence of a Post-Petition Termination Event allowed fees and costs of Professional Persons and any trustee that may be appointed under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed **[$200,000]**[6] to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the "*Supplemental Fees and Expenses*")(the amounts set forth in clauses (a)(i) through (a)(v) collectively constituting the *"Carve-Out"*).

---

[6]    The amount of the Supplemental Fees and Expenses remains subject to further negotiation; the Lender has not agreed to the bracketed sum.

(b)    Notwithstanding anything to the contrary in this Interim Order or the DIP Loan Documents, no proceeds of the Carve-Out, the Obligations, Cash Collateral (including any pre-petition retainer funded by the Lender pursuant to the Pre-Petition Loan Documents), Pre-Petition Collateral or DIP Collateral may be used to pay any claims for services rendered by any of the Debtor Professionals, the Committee Professionals or any other person in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief: (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations or the liens and security interests of the Lender in the Pre-Petition Collateral or the DIP Collateral; or (y) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the Lender of any of its rights and remedies under the Pre-Petition Credit Agreement, the Pre-Petition Loan Documents, this Interim Order and/or the DIP Loan Documents or the Lender's enforcement or realization upon any of the liens on or security interests in any Pre-Petition Collateral or DIP Collateral; *provided*, *however*, that the Committee Professionals may expend up to $25,000 for fees and expenses incurred in connection with the investigation of, but not litigation, objection or any challenge to, the stipulations and admissions of the Debtor contained in this Interim Order. The Lender shall retain its rights as a party in interest to object to any claims of any of the Debtor Professionals and the Committee Professionals.

14.    *Cash Collection Procedures.*  From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Collateral or services provided by the Debtor and all other cash or cash equivalents which shall at any time come into the possession or control of the Debtor, or to which the Debtor shall become entitled at any time, shall be deposited in the same bank account(s) into which the collections and proceeds of the Pre-Petition Collateral were

deposited under the Pre-Petition Credit Agreement (or in such other accounts as are designated or, in the case of the Carve-Out and the Approved Budget Expenses, consented to by the Lender from time to time). Except as otherwise set forth herein, all Cash Collateral in the possession or control of the Debtor as of the Petition Date and as otherwise set forth in section 552(b) of the Bankruptcy Code, constitutes proceeds of the Pre-Petition Collateral. All Cash Collateral shall only be utilized in conformance with an Approved Budgets (as defined below).  If applicable, all financial institutions in which any lockboxes, blocked accounts or other accounts of the Debtor are located are hereby authorized and directed to comply with any request of the Lender to turnover to the Lender all funds therein without offset or deduction of any kind.

15. *Budget; Use of Loan and Collateral Proceeds.*  Attached as <u>Exhibit B</u> hereto and incorporated herein by reference is a budget (which has been approved by the Lender) setting forth by line item all projected cash receipts and cash disbursements for the time period from the Petition Date through the week ending March 13, 2020 ( the *"Approved Budget"*).   The Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which the Lender and the Debtor agree in writing in its respective sole discretion (each such additional budget, a *"Supplemental Approved Budget"*)(the Approved Budget and any and all Supplemental Approved Budgets shall constitute  *"Approved Budget(s)."*)(*The aggregate of all expenses approved under the Approved Budgets, together with the permitted variances as set forth in Section 6.15 of the DIP Agreement, shall be collectively referred to as the "Approved Budget Expenses").*  Except as otherwise provided herein, the proceeds of any loans or other extensions of credit made by the Lender to Debtor pursuant to this Interim Order and the DIP Loan Documents, all proceeds of DIP Collateral and all Cash Collateral shall be used only as follows: (a) prior to the Post-Petition Termination Date, *first,* to the payment of the Approved

Budget Expenses (subject to the limitations and exceptions set forth in this ordering paragraph), and the Carve-Out, and *second,* thereafter, to any portion of the Obligations; and (b) on or after the Post-Petition Termination Date, *first*, to the payment of any Approved Budget Expenses and the Carve-Out that were incurred, accrued, unpaid or otherwise payable prior to the Post-Petition Termination Date, in amounts not to exceed the line items set forth for in the Approved Budgets through the Post-Petition Termination Date, but expressly including the Supplemental Fees and Expenses, and *second*, for indefeasible payment in full in cash of the Obligations (in such order as determined by the Lender in its sole discretion).  The Lender shall have no obligation with respect to the Debtor's use of the proceeds of the Post-Petition Financing, the DIP Collateral or Cash Collateral, and shall not be obligated to ensure or monitor the Debtor's compliance with any Approved Budgets or to pay (directly or indirectly from its DIP Collateral) any expenses incurred or authorized to be incurred pursuant to the Approved Budgets. Funds borrowed under this Interim Order and Cash Collateral used under this Interim Order shall be used by the Debtor in accordance with this Interim Order. The Lender's consent to any Approved Budgets shall not be construed as consent to the use of any Cash Collateral or a commitment to continue to provide Post-Petition Financing after the occurrence of a Post-Petition Default or beyond the date of a Post-Petition Termination Date, regardless of whether the aggregate funds shown on the Approved Budgets have been expended. To induce the Lender to permit the Debtor to use Cash Collateral and borrow additional funds, the Debtor has agreed, and this Court hereby orders, that as long as any of the Obligations are outstanding, the Debtor shall not seek, assert, argue for, encourage or support the use of Cash Collateral of the Lender by the Debtor except as expressly permitted and consented to by the Lender pursuant to the terms of this Interim Order.

16.    *Covenants.*  The Debtor shall timely comply with all of the covenants set forth in the Pre-Petition Credit Agreement, the Pre-Petition Loan Documents (except where such

covenant can no longer be performed), this Interim Order and the DIP Loan Documents, subject to the Notice and Cure Rights and any existing cure rights in the Pre-Petition Loan Documents.

17.    *Application of Collateral Proceeds.*  (a) Subject to paragraph 15 hereof as respects the Approved Budget Expenses, the Carve-Out and the Supplemental Fees and Expenses, all proceeds of Pre-Petition Collateral including Pre-Petition Cash Collateral shall be applied (i) *first*, to the payment of any Post-Petition Obligations then due to be applied in such order and manner as the Lender shall determine in its sole discretion, and (ii) *second*, to the payment of the Pre-Petition Obligations to be applied in such order and manner as the Lender shall determine in its sole discretion until paid in full. All proceeds of DIP Collateral including Post-Petition Cash Collateral shall be applied (i) *first*, to the payment of the payment of the Post-Petition Obligations then due to be applied in such order and manner as the Lender shall determine in its sole discretion, and (ii) *second*, to satisfy the Adequate Protection Claims, if any.

(b) In the event that there is ambiguity as to whether particular collateral is Pre-Petition Collateral or DIP Collateral, or whether proceeds are proceeds of Pre-Petition Collateral or DIP Collateral, such collateral shall be deemed to be Pre-Petition Collateral and such proceeds shall be deemed to be proceeds of Pre-Petition Collateral and applied accordingly in accordance with the provisions of this paragraph.  The Debtor shall not have the right to direct the manner of application of any payments to the Lender or any other receipts by the Lender of proceeds of any of the Pre-Petition Collateral or DIP Collateral other than in the manner set forth in this paragraph and the Pre-Petition Credit Agreement.

18.    *Non-Ordinary Course Dispositions.*  No sale, lease or other disposition of Pre-Petition Collateral or DIP Collateral outside the ordinary course of business (including any auction or other similar sales) may be done without the Lender's written consent.

19.    *Books and Records.*   The Debtor shall permit the Lender and any authorized representatives designated by the Lender (including, without limitation, its auditors, appraisers and financial advisors) to visit and inspect any of the properties of the Debtor, including the Debtor's respective financial and accounting records, and to make copies and take extracts therefrom, and to discuss Debtor's affairs, finances and business with Debtor's officers and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested. Without limiting the generality of the foregoing, the Debtor shall promptly provide to the Lender and the Lender's designated representatives any information or data reasonably requested to monitor the Debtor's compliance with the covenants in the Pre-Petition Credit Agreement and the provisions of the DIP Loan Documents and this Interim Order and to perform appraisals or other valuation analyses of any property of the Debtor.

20.    *The Lender's Reservation of Rights; No Waiver.*   The Lender does not waive, and expressly reserves, any and all claims, defenses, rights and remedies it has pursuant to any or all of the Pre-Petition Loan Documents, the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against the Debtor and any officer, director, employee, agent or other representative of the Debtor.  In addition, the rights and obligations of the Debtor and the rights, claims, liens, security interests and priorities of the Lender arising under this Interim Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtor, in its pre-petition capacity, under the Pre-Petition Loan Documents.  Without limiting the generality of the foregoing, the Lender may petition this Court for any such additional protection it may reasonably require with respect to the Pre-Petition Obligations, the DIP Obligations or otherwise, and nothing in this Interim Order

constitutes a finding with respect to the adequacy of the protection of the Lender's interests in the Pre-Petition Collateral.

21.     *Order Binding on Successors.*  The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtor, and its respective successors and assigns (including any trustee or other estate representative appointed as a representative of Debtor's estate or of any estate in any Successor Case).  Except as otherwise explicitly set forth in this Interim Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Interim Order or the DIP Loan Documents.

22.     *Effect of Dismissal, Conversion or Substantive Consolidation.*  If the Chapter 11 Case is dismissed, converted, otherwise superseded or substantively consolidated, the Lender's rights and remedies under this Interim Order and the DIP Loan Documents shall be and remain in full force and effect as if the Chapter 11 Case had not been dismissed, converted, superseded or substantively consolidated.  Furthermore, notwithstanding any such dismissal, conversion, supercission or substantive consolidation, all of the terms and conditions of this Interim Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

23.     *Releases and Validation of Pre-Petition Obligations and Liens; Allowance of Secured Claim.*  The releases, discharges, waivers and agreements set forth in Recital C and in this paragraph will be subject to the right of the Committee and any other party in interest to object on the terms and conditions set forth in paragraph 25.  The Debtor and its estate, hereby: (a) release and discharge the Lender, together with its affiliates, agents, attorneys, officers, directors and employees from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Pre-Petition Loan Documents, any aspect of the pre-petition relationship between the Lender and the Debtor, or any other acts or omissions by the

Lender in connection with any of the Pre-Petition Loan Documents or its pre-petition relationship with the Debtor; (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Pre-Petition Obligations and the security interests in and liens on the Pre-Petition Collateral in favor of the Lender; and (c) agree, without further Court order, to the allowance of the pre-petition claims of the Lender pursuant to §§ 502 and 506 of the Bankruptcy Code on account of the Pre-Petition Obligations as fully secured claims according to the Lender's books and records, the principal amount of which is not less than $26,700,000 as of the Petition Date, plus accrued pre-petition and post-petition interest, fees, expenses and other amounts chargeable under the Pre-Petition Loan Documents.[7]

24.    *The Lender's Relationship with Debtor.*  In making decisions to advance any loans or other extensions of credit to the Debtor, in administering any loans or other extensions of credit, or in taking any other actions reasonably related to this Interim Order or the Obligations or the DIP Loan Documents (including, without limitation, the exercise of its approval rights with respect to any budget), the Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), and the Lender's relationship with the Debtor shall not

---

[7] The Lender intends to seek relief from the necessary of filing a proof of claim in the Final Order.

constitute or be deemed to constitute a joint venture or partnership of any kind between the Lender and the Debtor.

25.    *Objections by Parties in Interest.*    (a) The stipulations, admissions and releases contained in this Interim Order shall be binding on the Debtor and all parties in interest, including, without limitation, any Committee, unless such Committee, other committee or any other party in interest (other than the Debtor) (i) obtains the authority to commence and commences, or, if the Chapter 11 Case is converted to a case under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case commences, on or before the date that is the later of (A) 75 days after the entry of this Interim Order, (B) in the case of such an action by the Committee, 60 days after the appointment of the Committee, or (C) such later date as has been agreed to, in writing, by the Lender, if any (such time period shall be referred to as the *"Challenge Period,"* and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the *"Challenge Period Termination Date"*), (x) a contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, or releases included in this Interim Order, or (y) a contested matter or adversary proceeding against the Lender in connection with or related to the Pre-Petition Obligations, the Pre-Petition Loan Documents, the validity, enforceability, priority or extent of the Lender's liens on the Pre-Petition Collateral, or the actions or inactions of the Lender arising out of or related to the Pre-Petition Obligations, or otherwise, including, without limitation, any claim against the Lender in the nature of a "lender liability" claim, or any other causes of action, setoff, counterclaim or defense to the Pre-Petition Obligations (including but not limited to those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code) (the objections, challenges, actions and claims referenced in clauses (x) and (y),

collectively, the *"Claims and Defenses"*) and (ii) obtains a judgment from this Court in any such

timely and properly commenced contested matter or adversary proceeding.

(b) If no Claims and Defenses have been timely asserted in any such adversary

proceeding or contested matter, then the admissions, stipulations, findings and releases included

in this Interim Order, including the release provisions herein, shall be binding on all parties in

interest, including any Committee, and (i) the Pre-Petition Obligations shall constitute allowed

claims, not subject to counterclaim, setoff, recoupment, subordination, recharacterization,

defense or avoidance, for all purposes in the Chapter 11 Case and any subsequent chapter 7 case,

(ii) the Lender's liens on the Pre-Petition Collateral shall be deemed legal, valid, binding,

enforceable and properly perfected, not subject to recharacterization, subordination, avoidance or

reduction and (iii) the Pre-Petition Obligations, the liens on the Pre-Petition Collateral, the

conduct of the Lender, and the Lender itself shall not be subject to any other or further challenge

by any party in interest, and any such party shall be enjoined and forever barred from seeking to

exercise the rights of the Debtor's estate regarding any such challenge, including, without

limitation, any successor thereto, or from asserting any claims and defenses against the Lender,

or its respective agents, affiliates, subsidiaries, directors, officers, employees, representatives,

attorneys or advisors (solely in its capacities as such).  If any such adversary proceeding or

contested matter is timely filed prior to the Challenge Period Termination Date, the stipulations

and admissions and provisions contained in this Interim Order or the Final Order shall

nonetheless remain binding and preclusive on the Committee, the Debtor and the Debtor's estate

and on any other person or entity, except to the extent that such findings and admissions were

expressly challenged in such adversary proceeding or contested matter by such party. The

Challenge Period may be extended for the benefit of any one or more parties by written

agreement of the Lender in its sole discretion without further order of the Court.  Nothing in this

Interim Order vests or confers on any person or entity, including any Committee, standing or authority to pursue any cause of action belonging to either or both of the Debtor or its estate, including, without limitation, any claim and defense or other claim against the Lender. If a chapter 7 trustee is appointed prior to the expiration of the Challenge Period, such trustee shall have until the later of (a) the termination of the Challenge Period or (b) fourteen (14) days following such trustee's appointment, to commence a contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, or releases included in this Interim Order, or to seek an extension of the Challenge Period.

26.     *Subordination Agreements.*   Subject to entry of the Final Order, the Subordination Agreements remain in full force and effect pursuant to Bankruptcy Code § 510.   Having been properly notified of the existence of various Events of Default under the Pre-Petition Credit Agreement, as described in Recital (C)(v) of this Interim Order, the subordinated parties to the Subordination Agreements may not ask, demand, sue for, accept or receive, and the Debtor may not pay to such subordinated parties, any payment of any Subordinated Debt.

27.     *Effect of Modification of Order.*   The Debtor shall not, without the Lender's prior written consent, seek to modify, vacate or amend this Interim Order or any DIP Loan Documents.   If any of the provisions of this Interim Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any Indebtedness outstanding immediately prior to the effective time of such stay, modification or vacatur, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Obligations.   Notwithstanding any such stay, modification or vacatur, any Obligations outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all the rights,

privileges and benefits, including, without limitation, the security interests and priorities granted

herein, with respect to all such Obligations.

28.  *Safe Harbor.*  The Court has considered and determined the matters addressed

herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the

Debtor to obtain credit on the terms and conditions upon which the Debtor and the Lender have

agreed.  Thus, each of such terms and conditions constitutes a part of the authorization under

§ 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in § 364(e)

of the Bankruptcy Code.

29.  *Subsequent Hearing; Procedure for Objections and Entry of Final Order.*  The

Motion is set for a Final Hearing before this Court at **[____ __.m. on January ____,]** 2020 (such

date or such later date to which the Final Hearing is adjourned or continued with the Lender's

consent, the *"Final Hearing Date"*), at which time any party in interest may present any timely

filed objections to the entry of a Final Order, in form and substance acceptable to the Lender in

its sole discretion.  The Debtor shall, within five (5) days from the entry of this Interim Order,

serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this

Interim Order, by regular mail upon (i) the Noticed Parties, and (ii) any other party which

theretofore has filed in the Chapter 11 Case a request for special notice with this Court and

served such request upon the Debtor's counsel.  The notice of the entry of this Interim Order and

the Final Hearing shall state that objections to the entry of a Final Order on the Motion shall be

in writing and shall be filed with the United States Bankruptcy Clerk for the Northern District of

Illinois no later than **[_____ ___,]** 2019, which objections shall be served so that the same

are received on or before 4:00 p.m. (prevailing Central time) of such date by (i) Adam Silverman

and Erich Buck, Adelman & Gettleman, Ltd., proposed counsel to the Debtor, (ii) James P.

Sullivan and David Audley, Chapman and Cutler LLP, counsel to the Lender, (iii) U.S.

Department of Justice, (iv) the SBA, and (v) the U.S. Trustee.  Any objections by creditors or

other parties in interest to any of the provisions of this Interim Order shall be deemed waived

unless filed and served in accordance with this paragraph.

30.    *No Marshalling.*  Subject to entry of the Final Order, the Lender shall not be under

any obligation to marshal any assets in favor of the Debtor or any other party or against or in

payment of any or all of the Obligations.

31.    *Shortened Notice*.  Notice of the Motion on a shortened and expedited basis is

allowed and approved.

32.    *Objections Overruled or Withdrawn.*  All objections to the entry of this Interim

Order have been withdrawn or overruled.

33.    *Controlling Effect of Order.*  To the extent any provisions in this Interim Order

conflict with any provisions of the Motion, any Pre-Petition Loan Documents or any DIP Loan

Documents, the provisions of this Interim Order shall control.

34.    *Order Effective.*  This Interim Order shall be effective as of the date of signature by

the Court.

Dated: _____ __, 2019    _____
      Chicago, Illinois                        HONORABLE
                                              UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

## DIP AGREEMENT

**EXHIBIT B**

**BUDGET**

**Ares Corp**
**Weekly DIP Budget**

| Week Ending =======> | 1 12/20/2019 | 2 12/27/2019 | 3 1/3/2020 | 4 1/10/2020 | 5 1/17/2020 | 6 1/24/2020 | 7 1/31/2020 | 8 2/7/2020 | 9 2/14/2020 | 10 2/21/2020 | 11 2/28/2020 | 12 3/6/2020 | 13 3/13/2020 | 1 - 13 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | | | |
| Total Customer Receipts | $ 854,099 | $ 667,991 | $ 659,214 | 892,016 | $ 1,052,248 | 954,697 | $ 1,062,797 | 881,494 | $ 875,411 | $ 969,777 | $ 1,066,071 | 916,287 | $ 957,923 | $ 11,810,026 |
| Other Sources | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Receipts** | 854,099 | 667,991 | 659,214 | 892,016 | 1,052,248 | 954,697 | 1,062,797 | 881,494 | 875,411 | 969,777 | 1,066,071 | 916,287 | 957,923 | 11,810,026 |
| **Cash Disbursements** | | | | | | | | | | | | | | |
| Labor | | | | | | | | | | | | | | |
| Payroll | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 1,820,000 |
| Employee Benefits | 5,000 | 85,000 | - | 200,000 | - | 5,000 | 85,000 | - | - | 5,000 | 85,000 | - | - | 470,000 |
| Temp Labor | 308,102 | 304,087 | 300,208 | 302,017 | 303,604 | 302,479 | 302,077 | 302,544 | 302,676 | 302,444 | 302,435 | 302,525 | 302,520 | 3,937,718 |
| **Total Labor** | 453,102 | 529,087 | 440,208 | 642,017 | 443,604 | 447,479 | 527,077 | 442,544 | 442,676 | 447,444 | 527,435 | 442,525 | 442,520 | 6,227,718 |
| Production and Freight | | | | | | | | | | | | | | |
| Current Materials/Packaging | 438,615 | 155,653 | 262,541 | 253,856 | 282,103 | 225,121 | 627,089 | 658,374 | 141,020 | 325,695 | 346,950 | 357,526 | 370,484 | 4,444,825 |
| Equipment Leases | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 65,000 |
| Past Due/503(b)(9) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Production and Freight** | 443,615 | 160,653 | 267,541 | 258,856 | 287,103 | 230,121 | 632,089 | 663,374 | 146,020 | 330,695 | 351,950 | 362,526 | 375,484 | 4,509,825 |
| Corporate | | | | | | | | | | | | | | |
| Rent and RE Taxes | - | - | 407,481 | - | - | - | - | 407,481 | - | - | - | 407,481 | - | 1,222,442 |
| Freight | 5,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 125,000 |
| Expense Reimbursement | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 195,000 |
| Insurance | 75,000 | 250,000 | - | - | 75,000 | - | - | - | - | 75,000 | - | - | - | 475,000 |
| Utilities, Telephone & IT | 20,000 | 20,000 | 120,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 360,000 |
| Accrued Professional Fees and Expenses | - | - | 449,035 | - | - | - | - | 411,500 | - | - | - | 512,131 | - | 1,372,666 |
| Other | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 208,000 |
| **Total Corporate** | 131,000 | 311,000 | 1,017,516 | 61,000 | 136,000 | 61,000 | 61,000 | 879,981 | 61,000 | 136,000 | 61,000 | 980,612 | 61,000 | 3,958,108 |
| Debt Service | | | | | | | | | | | | | | |
| **Total Debt Service** | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Disbursements** | 1,027,717 | 1,000,741 | 1,725,065 | 961,874 | 866,707 | 738,600 | 1,220,166 | 1,985,898 | 649,696 | 914,139 | 940,385 | 1,785,663 | 879,005 | 14,695,652 |
| **Net Cash Flow** | (173,617) | (332,750) | (1,065,850) | (69,858) | 185,541 | 216,098 | (157,369) | (1,104,405) | 225,715 | 55,639 | 125,686 | (869,375) | 78,919 | (2,885,626) |
| Beginning Balance | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 285,541 | 501,639 | 344,270 | 100,000 | 325,715 | 381,354 | 507,040 | 100,000 | 100,000 |
| DIP Funding | 173,617 | 332,750 | 1,065,850 | 69,858 | - | - | - | 860,134 | - | - | - | 462,336 | - | 2,964,545 |
| **Ending Cash Balance** | 100,000 | 100,000 | 100,000 | 100,000 | 285,541 | 501,639 | 344,270 | 100,000 | 325,715 | 381,354 | 507,040 | 100,000 | 178,919 | 178,919 |

Minimum Cash on Hand    $ 100,000